Willie Jasper DARDEN, Petitioner,
Cross-Respondent,

v.

Louie L. WAINWRIGHT, Secretary, Department of Corrections, State of Florida, Respondent, Cross-Petitioner.

No. 81–5590.

United States Court of Appeals,
Eleventh Circuit.

Feb. 14, 1983.

As Corrected March 9, 1983.

Opinion on Granting of Rehearing En
Banc April 6, 1983,

Robert Augustus Harper, Jr., Tallahassee, Fla., for petitioner, cross-respondent.

Richard W. Prospect, Asst. Atty. Gen., Daytona Beach, Fla., for respondent, cross-petitioner.

Before FAY and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.

FAY, Circuit Judge:

Willie Jasper Darden appeals the district court's denial of his habeas corpus petition challenging his conviction for first degree murder and sentence of death and raises three issues; whether the closing arguments of the state prosecuting attorneys denied him a fair trial; whether he received ineffective assistance of counsel; and whether the jury selection process violated the mandates of *Witherspoon v. Illinois.* After careful consideration of the issues raised on appeal, we affirm the denial of petition for the writ of habeas corpus.

### Background

Based upon a series of events occurring at Carl's Furniture Store in Lakeland, Florida on September 8, 1973,[1] appellant Darden was charged with the first degree murder of Carl Turman, the robbery of Helen Turman and the assault with intent to commit murder of Philip Arnold. The trial jury found Darden guilty on all three counts.

---

1. The historical facts are set out in more detail in *Darden v. Wainwright,* 513 F.Supp. 947 (M.D.Fla.1981) and *Darden v. State,* 329 So.2d 287 (Fla.1976).

Pursuant to the bifurcated trial procedure mandated by Fla.Stat. § 921.141 (1973), the jury recommended that Darden be sentenced to death. The trial judge subsequently entered findings and imposed the death sentence.

Darden appealed to the Supreme Court of Florida which affirmed the convictions and sentence. *Darden v. State,* 329 So.2d 287 (Fla.1976). The United States Supreme Court granted a petition for writ of certiorari, *Darden v. Florida,* 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976), and limited the issue to be considered to whether the prosecution's summation to the jury deprived Darden of due process of law. *Darden v. Florida,* 429 U.S. 1036, 97 S.Ct. 729, 50 L.Ed.2d 747 (1976). However, the Court subsequently dismissed the writ of certiorari as improvidently granted. *Darden v. Florida,* 430 U.S. 704, 98 S.Ct. 1671, 51 L.Ed.2d 751 (1977).

After the Governor signed a warrant for Darden's execution, Darden filed a petition for writ of habeas corpus in the district court. A stay of execution was entered and the case assigned to a magistrate. The magistrate held an evidentiary hearing on October 22 and 23, 1979 on Darden's claim of ineffective assistance of counsel. The magistrate filed his report and recommended that Darden's petition for writ of habeas corpus be granted on his claims of

prosecutorial misconduct during the summation and of improper excusal of prospective jurors. The magistrate found that Darden's other twenty-four claims, including that of ineffective assistance of counsel, were without constitutional merit. Both Darden and the State filed objections to the magistrate's report and recommendation.

After a hearing, the district court entered its thorough and well considered Memorandum Opinion rejecting the magistrate's recommendations and denying Darden's petition for writ of habeas corpus. Darden timely appealed the order of the district court raising three issues for our consideration.

### Prosecutorial Misconduct During Summation

■ Darden contends that remarks made by the Florida assistant state attorneys [2] during closing arguments during the guilt phase were so prejudicial as to constitute a denial of his right to due process. On cross-appeal, the state argues that the procedural default doctrine of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), bars our consideration of the merits of Darden's claim of prosecutorial misconduct. The state's position is without merit for two reasons. First, Darden's counsel did object twice during the prosecutor's final argument.[3] Second, on

---

2. The state divided its closing argument between attorneys C. Ray McDaniel and Norman White. Most of the improper comments were uttered in the latter and more lengthy portion of the argument by Mr. McDaniel. Neither prosecutor's conduct was an ethical model worth emulation.

3. Mr. McDaniel: [T]his sponsor, otherwise his girlfriend, knew that he was a criminal—prisoner, I'm sorry, prisoner; knew, let him bring the gun into her house while he was on weekend furloughs.
Mr. Goodwill: Now, I object. There's been no testimony of this.
Record at 751.
Mr. McDaniel: [D]on't forget, please about when Mr. Goodwill gets into five foot six and five foot eight, 185 pounds, 200 pounds, don't forget what he has done according to those witnesses, to make every attempt to change his appearance from September the 8, 1973. The hair, the goatee, even the moustache and

the weight. The only thing he hasn't done that I know of is cut his throat.
Mr. Maloney: Your Honor, that's about the fifth time that he has commented he wished someone would shoot this man or that he would kill himself. I wish the Court would instruct Mr. McDaniel to stick with what little evidence he has.
Mr. McDaniel: You don't have any evidence yourself, Mr. Maloney.
The Court: All right, gentlemen. Proceed with your argument. Objection will be overruled. Go ahead, sir.
Record at 779–780.
While the state points out the testimony of Mr. Goodwill during the evidentiary hearing in federal court on the ineffective assistance of counsel issue indicates that defense counsel's failure to object more or earlier may have been a tactical decision, this does not contradict the fact that counsel did object, however inartfully.

direct appeal of Darden's conviction and sentence the Florida Supreme Court considered the issue. It is well settled that where a state appellate court has adjudicated an issue on its merits, federal courts may consider it in a petition for habeas corpus. *Sasson v. Stynchombe,* 654 F.2d 371, 374 (5th Cir.1981); *Thompson v. Estelle,* 642 F.2d 996, 998 (5th Cir.1981); *Moran v. Estelle,* 607 F.2d 1140, 1142 (5th Cir.1979); *Cannon v. State of Alabama,* 558 F.2d 1211, 1216 n. 12 (5th Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). The state's suggestion that the Florida Supreme Court did not dispose of the issue on its merits is untenable.[4] *Wainwright v. Sykes* is therefore not a bar to our consideration of Darden's claim that prosecutorial misconduct denied him due process.

■ On a habeas corpus petition, our standard of review of the prosecutor's comments at trial is "the narrow one of due process, and not the broad exercise of supervisory power that [federal appellate courts] possess in regard to [their] own trial court[s]." *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1973). "In order for a state habeas corpus petitioner to prevail on a claim that an improper jury argument marred his trial, the asserted error must be one of constitutional magnitude. This means that the prosecutorial remarks must be so prejudicial that they render the trial fundamental-

ly unfair." *Houston v. Estelle,* 569 F.2d 372, n. 8 (5th Cir.1978).

■ There is no dispute in this case that "the prosecutor's remarks under ordinary circumstances would constitute a violation of the Code of Professional Responsibility." *Darden v. State,* 329 So.2d at 290. The district court noted that "anyone attempting a text-book illustration of a violation of the Code of Professional Responsibility, Canon 7, EC 7–24 and DR 7–106(C)(4), could not possibly improve" upon the example provided by the prosecutor during Darden's trial.[5] *Darden v. Wainwright,* 513 F.Supp. at 955. However, our inquiry must be whether the prosecutor's remarks denied Darden a fundamentally fair trial. Further, it is "well established that in reviewing prosecutorial comments for possible prejudice, a court must not consider the comments in isolation. The comments must be evaluated in the context not only of the prosecutor's entire closing argument but of the trial as a whole." *Cobb v. Wainwright,* 609 F.2d 754, 755 n. 7 (5th Cir.1980).

Because of a state procedural rule,[6] Darden's trial counsel had the opportunity to present the initial summation as well as rebuttal to the prosecutor's closing arguments. Thus, the prosecutors' comments must be considered in light of the defense attorney's initial summation which concentrated on the lack of evidence in the case, placing blame for this lack on the Polk County Sheriff's Office.[7] The defense ar-

---

4. The Supreme Court of Florida engaged in a lengthy several page analysis of the prosecutor's conduct which concluded, "Our review of the record convinces us that the remarks complained of were not sufficient to deprive Appellant of a fair trial when the totality of evidence is considered." *Darden v. State,* 329 So.2d at 291. The state Supreme Court thereafter noted in a single short paragraph that it had previously held that a prosecutor's challenged argument will be reviewed on appeal only when a timely objection is made. *Id.* We therefore agree with the district court that the Supreme Court of Florida "clearly entertained and determined the fair trial issue on its merits as the primary basis of its decision." 513 F.Supp. at 952. *Ratcliff v. Estelle,* 597 F.2d 474 (5th Cir. 1979) does not compel a different result.

5. The district court had specific reference to the prosecutor's expression of his personal opinion regarding Darden's guilt:

> I am convinced, as convinced as I know I am standing before you today, that Willie Jasper Darden is a murderer, that he murdered Mr. Turman, that he robbed Mrs. Turman and that he shot to kill Phillip Arnold. I will be convinced of that the rest of my life.

513 F.Supp. at 955.

6. Florida Rules of Criminal Procedure, Rule 3.250 (1973) provided that "a defendant offering no testimony in his own behalf, except his own, shall be entitled to the concluding argument before the jury."

7. The Judge is going to tell you to consider the evidence or the lack of evidence. We have a lack of evidence, almost criminally

gument also alluded to the death penalty,[8] introduced the idea of an "animal" as the perpetrator of the crimes[9] and contained personal opinion.[10]

The prosecutors then delivered closing remarks which, as the district court noted, even the state has candidly asserted no one has ever even weakly suggested were anything but improper. 513 F.Supp. at 952. The prosecutors attempted to place blame for the crime on the state's Division of Corrections since Darden was on furlough at the time of the offense, often implying that the death penalty would be the only insurance against a future similar act.[11] Like the defense, one prosecutor's argument used the word "animal"[12] and con-

negligent on the part of the Polk County Sheriff's Office in this case. You could go on and on about it. We all know there has been no expert testimony.
Record at 728.

8. You people would just be putting in time and so would I. But I'm not putting in time. I haven't been putting in time for the last five years, because they don't have it. They didn't bother to do it. They took a coincidence and they magnified that into a capital case. And they are asking you to kill a man on coincidence.
Record at 730. See also note 10 infra.

9. I intend to just briefly summarize the evidence that has been before you. I'm going to attempt to be as objective as possible. The first witness that you saw was Mrs. Turman, who was a pathetic figure; who worked and struggled all of her life to build what little she had, the little furniture store; and a woman who was robbed, sexually assaulted, and then had her husband slaughtered before her eyes, by what would have to be a vicious animal.
Record at 717.

And this murderer ran after him, aimed again, and this poor kid with half his brains blown away. Fires away, again hits him in the back, and he keeps on running. Mrs. Hill said he ran 500 yards before he collapsed in front of her house. It's the work of an animal, there's no doubt about it.
Record at 731–2.

10. So they come on up here and ask Citrus County people to kill the man. You will be instructed on lesser included offenses. I think that you will find it rather boring. The question is, do they have enough evidence to kill that man, enough evidence? And I honestly do not think they do. Thank you for your time.
Record at 736–7.

11. But let me tell you something. As far as I am concerned, there should be another Defendant in this courtroom, one more, and that is the division of corrections, the prisons. As far as I am concerned, and as Mr. Maloney said as he identified this man, this person as an animal, this animal was on the public for one reason. Because the division of corrections turned him loose, lets him out, lets him out on the public. Can we expect him to stay in a prison when they go there? Can we expect them to stay locked up once they go there? Do we know that they're going to be out on the public with guns, drinking?
Record at 749–750.

No, I wish that person or persons responsible for him being on the public was in the doorway instead of Mr. Turman. I pray that the person responsible for it would have been in that doorway and any other person responsible for it, I wish that he had been the one shot in the mouth. I wish that he had been the one shot in the neck, instead of the boy.

Yes, there is another Defendant, but I regret that I know of no charges to place upon him, except the public condemnation of them, condemn them. Turn them loose ...
Record at 750–1.

He is a prisoner. He is supposed to be. Mr. Turman is dead because of that unknown defendant we don't have in the courtroom allowed it. He is criminally negligent for allowing it.
Record at 752.

I will ask you to advise the Court to give him death. That's the only way that I know that he is not going to get out on the public. It's the only way I know. It's the only way I can be sure of it. It's the only way that anybody can be sure of it now, because the people that turned him loose—
Record at 753.

There is one person on trial, not the Polk County Sheriff's Office, not the Hillsborough Sheriff's Office, but he and his keepers, the Division of Corrections.
Record at 764–5.

I cannot help but wish that the Division of Corrections was sitting in the chair with him. Thank you.
Record at 782.

12. As far as I am concerned, and as Mr. Maloney said as he identified this man as an animal, this animal was on the public for one reason.
Record at 749.

But I am sure that I want you to remember Mr. Maloney's opening statement, opening argument when he called this person an animal. Remember that, because I will guarantee you I will ask for death. There is no question about it.

tained personal opinions.[13] The other prosecutor resorted to some statements which can only be described as tasteless and unprofessional.[14] Darden's attorneys then had the opportunity to rebut the prosecutors' statements on the final closing argument.[15]

■ While the prosecutors' comments would have been reversible error in an appeal from a federal criminal case,[16] this case is before us on a petition by a state prisoner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Our inquiry is therefore limited to whether the prosecutorial comments were so prejudicial as to render the trial fundamentally unfair as a matter of constitutional law. *Houston v. Estelle,* 569 F.2d at 378. The United States Supreme Court has noted that "the process of constitutional line drawing in this regard is necessarily imprecise." *Donnelly v. DeChristoforo,* 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974). It is not enough that the prosecutors' remarks were undesirable or even universally condemned. *Cobb v. Wainwright,* 609 F.2d at 754. A defect of constitutional proportions is not to be found in any but egregious cases. *Houston v. Estelle,* 569 F.2d at 382.

■ The district court concluded that habeas corpus relief was not warranted on the basis of the prosecutorial summation reasoning:

> The prosecutor's argument did not involve a manipulation or misstatement of the evidence nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent; most of the objectional content was invited by or was responsive to the opening summation of the defense; the Court instructed the jury on two occasions that the argument of counsel was not evidence and that their decision was to be made on the basis of the evidence alone; the challenged argument was presented without objection; the defense had the "last word" through the presentation of rebuttal argument; and the weight of the evidence against the Petitioner was heavy; indeed, the Supreme Court of Florida said there "was overwhelming eyewitness and circumstantial evidence to support a finding of guilt on all charges ..." Darden's trial was not perfect—few are—but neither was it fundamentally unfair.

513 F.Supp. at 958. [citation and footnote omitted]. Having considered the prosecutors' remarks and evaluated them in light of Darden's entire trial, we agree with the district court's conclusion that the prosecu-

---

Record at 753.

**13.** See *e.g.,* note 5 *supra.*

**14.** He shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash.
Record at 750.
I wish [Mr. Turman] had had a shotgun in his hand when he walked in the back door and blown his [Darden's] face off. I wish I could see him sitting here with no face, blown away by a shotgun.
Record at 758.
I wish someone had walked in the back door and blown his head off at that point.
But he is lucky, the public unlucky, people are unlucky, it didn't happen.
Record at 759.
[h]e fired in the boy's back, number five saving one. Didn't get a chance to use it. I wish he had used it on himself.
Record at 774.
And Mr. Darden saved one. Again, I wish he had used it on himself.
Record at 795.

I wish he [Darden] had been killed in the accident, but he wasn't. Again, we are unlucky that time.
Record at 775.
[d]on't forget what he [Darden] has done according to those witnesses, to make every attempt to change his appearance from September the 8th, 1973. The hair, the goatee, even the moustache and the weight. The only thing he hasn't done that I know of is cut his throat.
Record at 779.

**15.** *Cf. Houston v. Estelle,* 569 F.2d 372 (5th Cir.1978), where the Court noted that the defense could no longer respond to the prosecutorial argument except by objection and the prosecutor had prejudiced the right of defendant to object to impermissible comments by implying that defense counsel were trying to take the case away from the jury. *Id.* at 377.

**16.** *See e.g., United States v. Corona,* 551 F.2d 1386 (5th Cir.1977).

tors' comments did not deny Darden a fundamentally fair trial.

### Ineffective Assistance of Counsel

On appeal, Darden contends he was denied his sixth amendment right to the effective assistance of counsel during the guilt and penalty phases of his trial. After an evidentiary hearing, the magistrate issued a report and recommendation rejecting Darden's ineffective assistance of counsel claim. The district court likewise found no merit in Darden's claim.

It is well settled that the standard to be applied in evaluating ineffective assistance of counsel claims is whether counsel was "reasonably likely to render and did render reasonably effective assistance of counsel." *MacKenna v. Ellis*, 280 F.2d 592, 599 (5th Cir.1960), *adhered to en banc*, 289 F.2d 928 (5th Cir.), *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). Whether counsel has rendered adequate assistance is a mixed question of law and fact that requires the application of legal principles to the historic facts of the case. *Cuyler v. Sullivan*, 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714–1715, 64 L.Ed.2d 333 (1980); *Young v. Zant*, 677 F.2d 792, 798 (11th Cir.1982). The assistance rendered must be evaluated from the perspective of counsel, taking into account all the circumstances of the case, but only as those circumstances were known to counsel at that time. *Proffitt v. Wainwright*, 685 F.2d 1227 at 1247 (11th Cir.1982).

We have carefully examined the record in this case and find that the performance of Darden's defense attorneys, during either the guilt or penalty phase of the trial, did not fall below the "reasonably effective assistance" standard.

### Jury Selection

Darden contends that the jury which convicted him and recommended the death penalty failed to include a true cross section of the community because two prospective jurors were improperly excused for cause because of their scruples against the death penalty in violation of *Witherspoon v. Illi-*nois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The magistrate recommended that the petition for habeas corpus be granted on the basis of the excusal of venirepersons Varney and Murphy. The district court disagreed and held that "[i]n each instance, the jurors were interrogated as to whether they would be 'unwilling' or 'unable' to recommend a death sentence 'regardless of the facts' or 'regardless of the evidence.' The jurors who were excused gave affirmative responses to those 'hard' questions and they were properly dismissed." 513 F.Supp. at 962.

*Witherspoon* has been interpreted and applied in a plethora of cases. It is well settled that a state has the power to

> execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.*

*Adams v. Texas*, 448 U.S. 38, 44, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980), *quoting Witherspoon v. Illinois*, 391 U.S. at 522–23, n. 21, 88 S.Ct. at 1777 (emphasis in original).

Neither *Witherspoon* nor *Adams* provides trial courts with a formula or requisite colloquy for the proper excusal of prospective jurors on *Witherspoon* grounds. Instead, the trial judge must decide whether each particular venireperson has made it "unmistakably clear" that he or she is within one of the two prongs of *Witherspoon*. The trial judge is in the best position to evaluate the prospective juror's demeanor and answers to the questions. For this reason, trial judges are generally accorded broad discretion in evaluating juror impartiality. *See, Irwin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *United States v. Robbins*, 500 F.2d 650, 653 (5th Cir.1977). This tenent has even greater

efficacy in a situation such as the present one—a federal appellate court reviewing the decision of a federal district court on a § 2254 habeas corpus petition alleging constitutional error in a state trial. The state court's factual findings are entitled to a presumption of correctness. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Nevertheless, close scrutiny of the voir dire examinations of the prospective jurors is necessary to insure strict adherence to the mandates of *Witherspoon. See, Granviel v. Estelle,* 655 F.2d 673, 677 (5th Cir.1981); *Burns v. Estelle,* 626 F.2d 396 (5th Cir.1980) (en banc). Such scrutiny of the cold record must not, however, treat the words of prospective jurors as free floating icebergs unrelated to the voir dire examination as a whole. The statements of veniremen Varney and Murphy, like all statements, must be examined and interpreted in the context in which they occurred.

As noted by the district court,[17] the state trial judge was cognizant of *Witherspoon.* During voir dire, the trial court explained the "capital punishment feature of the case" (R. at 42) and the following colloquy occurred:

THE COURT: Now I am going to ask each of you individually the same question so listen to me carefully, I want to know if any of you have such strong religious, moral or conscientious principles in opposition to the death penalty that you would be unwilling to vote to return an advisory sentence recommending the death sentence even though the facts presented to you should be such as under the law would require that recommendation? Do you understand my question?

MR. MALONEY: Your Honor, pursuant to the motion I filed beforehand I object to this question. I believe that it is irrelevant to the matter at hand and I think that the discussion of this at this time prejudices the defendant's right to a fair and impartial trial.

THE COURT: All right, sir. Motion will be denied and the objection overruled.

All right, Mrs. Macy, do you hold such conscientious moral or religious principles in opposition to the death penalty you would be unwilling under any circumstances to recommend the death sentence?

MRS. MACY: No, sir.

THE COURT: Do you, Mr. Blankenship?

MR. BLANKENSHIP: No, sir.

THE COURT: Mr. Pelellat?

MR. PELELLAT: No, sir.

THE COURT: Mrs. Spike?

MRS. SPIKE: No, sir.

MR. VARNEY: Yes, sir.

THE COURT: You feel then, sir, that even though and I am not saying it will it would be purely speculative, in the event that the evidence should be such that under the law that should be the legal recommendation you would be unwilling to return such a recommendation because of your conscientious beliefs?

MR. VARNEY: I believe I would.

THE COURT: All right, sir. You will be excused.

MR. MALONEY: I renew the objection. I do not think he should be challenged for cause.

---

17. It should first be observed that the trial judge was fully conscious of the existence of the *Witherspoon* decision. That is clear because the record discloses a specific pretrial discussion of the case. Defense counsel made a motion to exclude any examination of prospective jurors concerning their attitudes about the death penalty because of the bifurcation of that issue, citing *Witherspoon;* but the trial judge ruled, quite properly, that the motion would be denied since, in the event of conviction, the same jury would then consider the issue of punishment. The Court also remarked (R. 18):

It is my ruling if a prospective juror states on his voir dire examination that because of his moral, religious or conscientious principles and belief he would be *unwilling to recommend a death penalty even though the facts and circumstances meet the requirements of law,* then he in effect has said he would be unwilling to follow it or if he did follow it, it would be going against his principles, and, therefore, I would rule that would be disqualification. If that exists, I intend to disqualify for cause. (Emphasis supplied).
513 F.Supp. at 959.

THE COURT: Yes, sir, the objection will be noted and overruled.

All right, Mr. Varney, you will be excused. Thank you very much for your service.

The trial court and counsel then proceeded with the examination of other prospective jurors, the transcription of which comprises over one hundred pages of the record. During this interim, three other venirepersons were excused for cause on *Witherspoon* grounds.[18] The last prospective juror to be so excused was Murphy:

THE COURT: What did you do prior to retirement, sir?

MR. MURPHY: Several jobs. I was eight and a half years in the administration office in a seminary, before that I was thirty years with the utilities.

THE COURT: What seminary were you with, sir?

MR. MURPHY: St. Pios, Uniondale, New York.

THE COURT: Do you have any moral or religious, conscientious moral or religious principles in opposition to the death penalty so strong that you would be unable without violating your own principles to vote to recommend a death penalty regardless of the facts?

MR. MURPHY: Yes, I have.

THE COURT: All right, sir, you will be excused then.

(Mr. Murphy left the jury box.)

R. at 165.

The state trial court did not violate the mandates of *Witherspoon* in excusing prospective jurors. All the excused venire-

---

18. Venirepersons Mays, Carn and Maher were excused.

THE COURT: Mrs. Hann, do you hold such strong conscientious moral or religious beliefs that you would be unwilling under any event to return a death sentence?

Mrs. Hann: No, sir.

The Court: Mr. Waller?

Mr. Waller: No, sir.

The Court: Mr. DeMilt?

Mr. DeMilt: No, sir.

The Court: Mr. Dorminy?

Mr. Dorminy: No, sir.

The Court: Mrs. Keck?

Mrs. Keck: No, sir.

The Court: Mr. Roberts?

Mr. Roberts: No, sir.

The Court: Mr. Mays?

Mr. Mays: Yes. I could not recommend it.

The Court: All right.

You will be excused, Mr. Mays. Mr. Maloney, I assume you wish the same objection to apply to him.

Mr. Maloney: Yes, Your Honor.

The Court: So recorded.

(Mr. Mays was excused from the jury box.)

R. at 45–46.

The Court: Ms. Carn, the fact your husband for a while was a police officer and the fact that we have here listed as witnesses many police officer and deputy sheriffs conceivably could raise a little bit of a problem. Do you think that because of your husband's previous occupation that you might be a little inclined to give what the officers say more weight than you would any other witness you didn't know?

Ms. Carn: I don't think that would; but I do not believe in capital punishment.

The Court: The question isn't, ma'am, whether you believe in capital punishment or not; the question is whether or not you have such a strong disbelief in it as to make it unable for you to vote to return a recommendation of the death penalty regardless of what the evidence might be.

Ms. Carn: That's right.

The Court: All right, ma'am. Then we will excuse you then right now. I appreciate your candor.

Mr. Maloney: Your Honor, once again I object. I don't think that is relevant.

The Court: Objection will be noted.

(Ms. Carn was excused from the jury box.)

R. at 106–107.

The Court: I have asked the others and I will ask each of the four of you whether you have such strong religious conscientious or moral principles against the imposition of the death penalty that you would be unwilling to vote to return a recommended sentence of the death penalty regardless of what the evidence or the facts might be? Would you Ms. Pigeon?

Ms. Pigeon: Yes, sir.

The Court: Mr. Wall?

Mr. Wall: No, sir.

The Court: How about you, Ms. Maher?

Ms. Maher: Yes, I do have such convictions. I am a Seventh Day Adventist.

The Court: And no matter what the evidence showed you don't think you would vote for it?

Ms. Maher: I couldn't, sir.

The Court: Very well, over the objections of the defendant she will be excused.

(Ms. Maher was excused from the jury box.)

R. at 109–110.

persons unequivocally answered that they would be "unwilling under any circumstances" or "unable without violating" their principles to recommend the death penalty.[19] In the context of the specific facts of this case, and the trial court's repeated indulgence in the *Witherspoon* inquiry, the statements of the venirepersons rendered their excusal proper under *Witherspoon*.

### Conclusion

Having found that the closing arguments of the state prosecuting attorneys did not deny Darden a fair trial;[20] that Darden received effective assistance of counsel; and that the jury selection process did not violate the mandates of *Witherspoon*, the district court's denial of the petition for writ of habeas corpus is

AFFIRMED.

CLARK, Circuit Judge, dissenting:

I cannot agree with the district court's conclusion that Darden's trial was fundamentally fair as a matter of constitutional law. I start by assuming that fair means "characterized by honesty and justice; free from fraud, injustice, prejudice or favoritism; typical, representative". *Webster's Third New International Dictionary*, 1976. I further assume that "fundamental" refers to the basic elements of a trial, such as an impartial judge and jury and right to counsel, to which every criminal defendant is entitled regardless of the evidence in a case. Stated another way, a trial lacks fundamental fairness when error is committed which is not harmless beyond a reasonable doubt.

Every defendant is entitled to a fundamentally fair trial, without reference to the weight of the evidence or the heinous nature of the crime. When a defendant receives the death penalty, uncorrectable after execution, the force of the rule becomes more apparent. When the defendant's defenses are alibi and misidentification, the uncorrectability of a mistake has such a consequence that the harmless doctrine must be closely scrutinized when it is clear that the error could have affected the sentence.

From the time Darden was arrested, throughout his trial and sentencing, he maintained his innocence. The evidence which convicted Darden was the identification of him by Mrs. Turman, widow of the man murdered, and Philip Arnold, who was shot by the killer. Four days after the crime and one day after the funeral, Mrs. Turman, while in a distraught state, went to the courthouse for the preliminary hearing where she identified the defendant as her husband's killer. Darden was in a very small courtroom adjoining the holding cell; he was the only black person at the defense table; and there is an indication that he was the only black person in the room. The prosecutor pointed to him and asked Mrs. Turman if this was the man who did it, to which she responded yes. All of this was over strenuous objection of Darden's counsel.[1]

The other eye witness identification was made by Philip Arnold, who was shot at the time Mr. Turman was killed. The crime occurred September 8, 1973. Arnold testi-

---

**19.** We agree with the district court that venireman Varney's subsequent subjunctive statement "I believe I would" was not equivocation in the context of this case:

> It must be noted, however, that Mr. Varney first gave an unqualified yes in answer to the question whether he would be 'unwilling under any circumstances to recommend the death sentence.' Because of his affirmative response the Court pressed the subject with another question and he declared, again, 'I believe I would.' Nothing more was required. A juror should be subjected to voir dire examination, not cross examination.

513 F.Supp. at 962 n. 18.

**20.** We do not understand the comment in Judge Clark's dissent relating to the Florida Public Defender's failure to object as not being a tactical decision. The record discloses that Darden's counsel did object, which we recognize. Footnote 3, *supra*. Further, the Florida Supreme Court did consider the prosecutor's closing arguments, and the merits of all issues raised in connection therewith. The Florida Supreme Court did not rely upon any lack of contemporaneous objection nor any other rule of procedural default.

**1.** Transcript at 215–23, Habeas Corpus proceeding at 150, *et seq.*

fied on January 18, 1974. He had seen Darden in the courtroom during the previous two days. Arnold had been shown a photograph of Darden a few days after the crime as part of a group photographic identification procedure, evidence of which was suppressed by the state trial court. It is impossible to say whether the identification was tainted by the photograph or by Arnold seeing Darden in the courtroom, but Arnold did identify Darden as the person who was in the store with Mrs. Turman immediately after her husband was shot.[2]

From the voir dire examination through closing argument, the jury was impressed with the seriousness of the identification issue. They accepted the validity of the identification and convicted Darden of first-degree murder. The recommendation of the death sentence by the jury was not unanimous. We do not know what the jury count was between 7 to 5 and 11 to 1. Because I believe the prejudicial argument of counsel had an impact upon the jury which was not harmless beyond a reasonable doubt and did affect their deliberations with respect to the death penalty, I dissent.

A short review of the prosecutorial misconduct is necessary. As stated by the district court: "At all stages of this proceeding, the state has candidly asserted that 'no one has ever even weakly suggested that [the prosecutor's] closing remarks were anything but improper....'" *Darden v. Wainwright,* 513 F.Supp. 947, 952 (M.D.Fla. 1981). The majority opinion has this to say about the prosecutorial misconduct:

> There is no dispute in this case that "the prosecutor's remarks under ordinary circumstances would constitute a violation of the Code of Professional Responsibility." *Darden v. State,* 329 So.2d at 290. The district court noted that "anyone attempting a text-book illustration of a violation of the Code of Professional Responsibility, Canon 7, EC 7–24 and DR 7–106(c)(4), could not possibly improve" upon the example provided by the prosecutor during Darden's trial.

At 1034 (footnote omitted). Numerous examples of the improper argument are set out in the opinions of the Florida Supreme Court, the district court, and the majority opinion.

Because this is a death case and there is one grossly prejudicial argument affecting the sentencing, I cannot escape the conclusion that this argument had a fundamentally unfair impact upon the result. After making his improper argument that he would believe until his death that the defendant was guilty, and that the corrections officer who released Darden on furlough from the corrections institute should also be on trial for murder, the prosecutor further stated:

> The second part of the trial I will request that you impose the death penalty. I will ask you to advise the Court to give him death. That's the only way that I know that he is not going to get out on the public. It's the only way I know. It's the only way I can be sure of it....

*Darden v. State,* 329 So.2d 287, 289 (Fla. 1976). The sole purpose of this part of the prosecutor's argument was to convince the jury that prison officials release dangerous offenders and the public could only be safe if they recommended Darden's execution. Defendant was denied a fair trial.

One of the hardest tasks facing an appellate judge is reviewing a claim of constitutional error in a state habeas corpus proceeding. The problem is more acute when there are instances where the error may be harmless beyond a reasonable doubt and others where it may not be. Comments helpful to an appellate judge in considering the subject of harmless error on appellate review are found in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), as follows:

> In the final analysis judgment in each case must be influenced by conviction resulting from examination of the proceedings in their entirety, tempered but not

**2.** For a review of cases discussing various methods of identification and the possibility of suggestibility inherent in some methods, see

*United States v. Wade,* 388 U.S. 218, 233, 87 S.Ct. 1926, 1935, 18 L.Ed.2d 1149, 1160 (1967).

governed in any rigid sense of stare decisis by what has been done in similar situations. Necessarily the character of the proceeding, what is at stake upon its outcome, and the relation of the error asserted to casting the balance for decision on the case as a whole, are material factors in judgment.

\* \* \* \* \* \*

In criminal causes that outcome is conviction. This is different, or may be, from guilt in fact. It is guilt in law, established by the judgment of laymen. And the question is, not were they right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting.

This must take account of what the error meant to them, not singled out and standing alone, but in relation to all else that happened. And one must judge others' reactions not by their own, but with allowance for how others might react and not be regarded generally as acting without reason. This is the important difference, but one easy to ignore when the sense of guilt comes strongly from the record.

328 U.S. at 762, 764–65, 66 S.Ct. at 1246, 1247–48, 90 L.Ed. at 1565–1566 (citations omitted).

With respect to harmless constitutional errors, the fundamental rule is found in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), where the court said the following which is applicable to this case:

In fashioning a harmless-constitutional-error rule, we must recognize that harmless-error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence, or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one. What harmless-error rules all aim at is a rule that will save the good in harmless-error practices while avoiding the bad, so far as possible.

... We prefer the approach of this Court in deciding what was harmless error in our recent case of *Fahy v. State of*

*Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171. There we said: "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.,* at 86–87, 84 S.Ct. at 230. Although our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error, this statement in *Fahy* itself belies any belief that all trial errors which violate the Constitution automatically call for reversal. At the same time, however, like the federal harmless-error statute, it emphasizes an intention not to treat as harmless those constitutional errors that "affect substantial rights" of a party. An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot, under *Fahy,* be conceived of as harmless. Certainly error, constitutional error, in illegally admitting *highly prejudicial* evidence or *comments,* casts on someone other than the person prejudiced by it a burden to show that it was harmless. (footnote omitted)

386 U.S. at 22–24, 87 S.Ct. at 827–28, 17 L.Ed.2d at 710 (emphasis added).

Under the *Chapman* and *Fahy* standard, "there is a reasonable possibility that the [comments] complained of might have contributed to the [conviction or sentence]." Darden's right to be tried by an impartial jury was substantially affected by the inflammatory and prejudicial argument. The state offered no showing that the error was harmless.

My concern is highlighted by a view expressed in the Florida Supreme Court opinion, affirming the conviction and death penalty, where the majority opinion has this comment:

The language used by the prosecutor would have possibly been reversible error if it had been used regarding a less heinous set of crimes. The law permits fair comment. This comment was fair.

*Darden v. State,* 329 So.2d 287, 290. Darden was on trial for his life and his defenses were alibi and identification. If another person committed the crime, the heinous nature of the crime should have no affect upon the result. Darden was on a three-day furlough from the correctional institution from which he anticipated an early

parole. The prosecutor's argument that the state had committed a crime in letting Darden out on a furlough and that the only way to correct that problem was to execute Darden certainly had an impact upon this jury.

It is also my opinion that Darden had ineffective assistance of counsel by reason of his attorney not objecting to the prejudicial argument. This ineffectiveness is a part of the denial of Darden's Fourteenth Amendment right to due process. His attorney, an assistant Florida Public Defender, explained at the habeas corpus proceeding that he purposely did not object to the argument so that he could preserve an error for appeal. This was clearly against his client's best interests and not a reasoned tactical decision in light of Florida's contemporaneous objection rule which was reaffirmed in its modern-day version in 1967 by the Supreme Court of Florida in *Florida v. Jones,* 204 So.2d 515 (Fla.1967). At page 519, the court commented that since the *Gideon* case and the appointment of counsel to defend indigents, "their rights are now well guarded by defending counsel." The court went on to say that subsequently the court would not consider an assignment of error on improper argument of the prosecutor unless an objection and motion for mistrial were timely made.

In this case the prosecutor conducted a highly inflammatory and prejudicial argument against the defendant, his ineffective counsel failed to object, and the trial court permitted this inappropriate conduct of the two lawyers to go unabated. Yet, the State in arguing the contemporaneous objection rule, relies upon the Florida Supreme Court continuing to hold that "their [indigent defendants] rights are now well guarded by defending counsel." [3] Darden's due process rights were not well guarded in this case. The state through erroneous actions of its prosecutor, state employed public defender, and state trial court, combined to deny defendant his due process right to a fundamentally fair trial pursuant to the Fourteenth Amendment. These actions cannot be said to be harmless in light of the facts in this case, the bases of the defense, and the sentence of death.

In addition to dissenting on the issues of prejudicial argument of counsel and ineffectiveness of defense counsel, I dissent on

the *Witherspoon* issue on the ground that the jurors were not given the opportunity to "make unmistakably clear" their inability to be impartial notwithstanding their views with respect to the death penalty.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before GODBOLD, Chief Judge, and RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, ANDERSON and CLARK, Circuit Judges.[*]

BY THE COURT:

A member of this Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by this Court en banc *with* oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of en banc briefs.

---

**3.** *Jones* was reaffirmed in *Clark v. State,* 363 So.2d 331 (Fla.1978).

[*] Judge Hatchett is disqualified and did not participate in this decision.