993 F.2d 913
 301 U.S.App.D.C. 251
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Thomas A. ARRINGTON, Appellant.
 Nos. 91-3150, 92-3119.
 United States Court of Appeals, District of Columbia Circuit.
 April 26, 1993.
 
 Before: EDWARDS, SENTELLE and HENDERSON, Circuit Judges
 JUDGMENT
 PER CURIAM.
 
 
 1
 These appeals were heard on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties and arguments by counsel. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). On consideration thereof, it is
 
 
 2
 ORDERED AND ADJUDGED that appellant's conviction is affirmed and the request for a new trial is denied.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b).
 
 MEMORANDUM
 
 4
 After a jury trial, the appellant, Thomas Arrington, was convicted of distribution of crack cocaine and moved for a new trial, alleging ineffective assistance of counsel. The district court denied the motion and Arrington appeals. For the reasons set forth below, we affirm the district court.
 
 I.
 
 5
 On November 2, 1990, after a long undercover investigation of narcotics activity on P Street, Northwest, police arrested the appellant, Thomas Arrington. A grand jury subsequently indicted him on four counts of distribution of crack cocaine. He was also indicted on one count of possession of a firearm by a convicted felon after the police discovered a handgun in his car during an inventory search conducted four days after his arrest.
 
 
 6
 At Arrington's trial, Officer Michael Smith of the United States Park Police testified that, while working undercover, he purchased crack cocaine from Arrington four different times in September and October of 1990. He acknowledged that an informant originally introduced Arrington to him. In conjunction with Smith's testimony, the government introduced surveillance photographs of each of the sales. The photographs showed Arrington meeting and talking with Smith and also standing beside Smith's car. In none of the photographs, however, could the items in the transaction between Officer Smith and Arrington be identified. The government also introduced audiotapes made by Smith with a wire tape recorder he wore each time he met Arrington. Although of poor quality, the tapes recorded Smith and Arrington arranging the purchases. Other police officers testified that they observed the meetings between Smith and Arrington although none saw the two actually exchange money and drugs. Finally, the government introduced evidence that each of the packaged substances Officer Smith submitted to the police lab after each transaction with Arrington tested positive for crack cocaine.
 
 
 7
 Arrington took the stand at trial. He testified that Lonnie Hawkins, his mother's boyfriend, introduced him to Smith as a potential drug buyer but that he became suspicious of Smith when Smith offered to pay Arrington a $100 debt that Hawkins owed him. Arrington stated that he later confronted Hawkins, pushed him against a wall and forced him to admit Smith's identity as an undercover officer. Knowing that he was dealing with the police yet wanting to make some easy money, Arrington claimed that he decided to sell Smith fake crack cocaine made from wax and vanilla. Accordingly, Arrington acknowledged the police tapes and photographs but claimed that he had to act as if he were selling drugs to make Smith think the fake drugs, known as "burn bags," were real. Anticipating the prosecution's cross-examination, Arrington admitted on direct that he had previously been convicted of armed robbery.
 
 
 8
 Arrington's court appointed lawyer, Thomas Abbenante, initially subpoenaed Hawkins. On March 29, 1991, the day the defense began, however, Abbenante interviewed Hawkins and concluded that Hawkins would not corroborate Arrington's story if called as a witness. He also believed that Hawkins was under the influence of narcotics that day. Therefore, Abbenante decided not to call him as a witness.
 
 
 9
 Finally, in closing argument, Abbenante told the jury:
 
 
 10
 I am not going to stand here and insult your intelligence by trying to convince you that Mr. Arrington is some angel; that he is a good person that we should respect or like; or that we shouldn't have disdain for him or disgust for him because he's a drug dealer....
 
 
 11
 Mr. Arrington is not a nice person. He is not the kind of person you would have over to your house or you would want to have your daughter date....
 
 
 12
 Now, maybe they [the police] need to get Mr. Arrington and his buddies, and no one is disputing that. However, whether they should get him and whether he needs to be put off the streets is not the issue here. The issue here is the trial in this case....
 
 
 13
 Ladies and gentlemen, what is at issue here is this case and this trial. I am not going to stand up here and tell you that I like Mr. Arrington, and that I think Mr. Arrington is a fine person. The point is that in this particular case the government has not proven him guilty.
 
 
 14
 Tr. of Closing Argument at 76, 80, 83-84, 87 [hereinafter Transcript].
 
 
 15
 Abbenante then argued vigorously in support of Arrington's version of events. He noted that Arrington's version was consistent with the photographs and the police tapes, id. at 75, he suggested that the police, in arresting Arrington, sought revenge for having been burned, id. at 83-85, and he maintained that Arrington's willingness to admit to the jury that he had distributed drugs in the past increased his credibility by implying that Arrington had nothing to hide. Id. at 75, 77-78. In addition, Abbenante pointed out weaknesses in the government's case. He noted that the government had failed to introduce evidence of fingerprints on the narcotics. Id. at 76. He also told the jury that the government had failed to call Leonard Hawkins to contradict Arrington's story. Id. at 77-78. Finally, Abbenante pointed out that the government "hasn't shown you one photograph with Mr. Arrington handing this undercover officer anything." Id. at 76. Thus, throughout his closing argument, Abbenante kept to the theme that Arrington's story was credible and therefore the government had failed to establish Arrington's guilt. Id. at 75-77, 81, 82, 85, 87.
 
 
 16
 The jury convicted Arrington of distribution of cocaine but acquitted him on the firearms charge. The district court sentenced him to 175 months of imprisonment. Arrington then filed a motion for a new trial, claiming ineffective assistance of counsel. He alleged that Abbenante had not prepared adequately for trial and had failed to call an important corroborative witness (Hawkins). He also argued that Abbenante's closing argument was prejudicial to his defense. The trial court denied the motion without a hearing.
 
 II.
 
 17
 A court deciding an ineffective assistance of counsel claim must judge the reasonableness of counsel's conduct at the time it occurred and under the facts of the case. Strickland v. Washington, 466 U.S. 668, 690 (1984). In Strickland, the Supreme Court held that a defendant asserting such a claim must show both that the counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," id. at 687, and that those errors were "prejudicial to the defense." Id. at 691. To show prejudice the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.
 
 
 18
 Arrington first maintains that Abbenante failed to prepare adequately for trial. Specifically, Arrington alleges that Abbenante did not discuss defense options with him until two days before trial. If he had had more time to reflect, Arrington submits, he would have abandoned the burn bag defense and not testified at trial.
 
 
 19
 It is indisputable that counsel has a duty to investigate his client's case. Strickland, 466 U.S. at 690. The nature and extent of the investigation depends on the number of issues presented, the complexity of the issues and the likely strategies of opposing counsel. United States v. Decoster, 624 F.2d 196, 209 (D.C.Cir.1976). Only after "reasonable investigation" is counsel able to make informed tactical decisions. United States v. Barbour, 813 F.2d 1232, 1234 (D.C.Cir.1987).
 
 
 20
 The record reflects that Abbenante's investigation of the facts and law of Arrington's case was, at the least, reasonable. Abbenante's expense voucher indicates that he met with Arrington nine times between November 8, 1990 and March 10, 1991. See Arrington's Reply Br.App. at 3. Arrington does not dispute that Abbenante hired an investigator nor does he allege that Abbenante would have discovered additional evidence or uncovered new witnesses had Abbenante done more investigation. Instead, Arrington challenges the choice of the burn bag defense. "[S]trategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. The burn bag defense provided an explanation for Arrington's appearance in police photographs and on police tapes and it allowed Arrington to capitalize on the fact that the photographs did not show him selling drugs specifically. The defense also gave Arrington a motive for his multiple meetings with Smith. Furthermore, it allowed Arrington to stress both that the government did not field test the substance he sold Smith and that other officers did not see what items he and Smith exchanged. Although there was unquestionable risk in Arrington's taking the stand and exposing his criminal past, we believe that, in light of the government's evidence against him, use of the burn bag defense did not prejudice Arrington's trial.
 
 
 21
 Arrington next alleges that Abbenante erred by failing to call Hawkins as a witness. In explaining at trial why he did not intend to call Hawkins, Abbenante told the court, "Do you think the informant [Hawkins] is going to come in here and admit he told Mr. Arrington that [Smith was a police officer] after he cooperated with police? I mean he is not crazy." J.A. at 129. In a post-trial affidavit, Abbenante stated that when Hawkins appeared at trial in response to Abbenante's subpoena, he informed Abbenante that he would not corroborate Arrington's story. Moreover, at the time Hawkins appeared to Abbenante to be under the influence of narcotics. Arrington does not contest Abbenante's assertions. At best, Hawkins was an unpredictable and perhaps hostile witness. Abbenante did not err by failing to call him.[1]
 
 
 22
 Arrington's third claim, that Abbenante prejudiced Arrington's defense in his closing argument, warrants some discussion. During closing argument, Abbenante told the jury that Arrington was "not a nice person ... not the kind of person you would have over to your house." Tr. at 76. He also conceded that "maybe they [the police] need to get Mr. Arrington and his buddies, and no one is disputing that. However, whether they should get him ... is not the issue here." Id. at 83-84. Abbenante concluded by saying "I am not going to stand up here and tell you that I like Mr. Arrington, and that I think Mr. Arrington is a fine person." Id. at 87. Arrington argues that these remarks communicated Abbenante's personal disdain for his client, prejudiced the jury against him and amounted to an invitation to the jury to convict him.
 
 
 23
 According to the Supreme Court, "[i]t is clear that counsel on both sides of the table share a duty to confine arguments to the jury within proper bounds." United States v. Young, 470 U.S. 1, 8 (1985). Courts have found that defense counsel's admission of the defendant's guilt in closing argument undermines the adversarial process and constitutes per se ineffective assistance of counsel. See, e.g., United States v. Swanson, 943 F.2d 1070, 1074-75 (9th Cir.1991); Wiley v. Sowders, 647 F.2d 642, 644-46, 648 (6th Cir.1981). In Swanson, defense counsel assessed his client's defense by telling the jury, "I don't think in this case it comes to the level of reasonable doubt." Swanson, 943 F.2d at 1077. The Ninth Circuit upheld Swanson's claim of ineffective assistance of counsel without requiring a showing that the statement actually prejudiced the jury.
 
 
 24
 We believe that Abbenante's argument did not concede Arrington's guilt.[2] Several times in closing argument, Abbenante emphasized that the government had failed to prove Arrington guilty. In fact, Abbenante ended by arguing:
 
 
 25
 The point is that in this particular case the government has not proven him guilty. Now, when you came in here and took your oath and swore to follow the judge's instructions, you said that you would. When you have looked at this case carefully, you must conclude that the government has not proven Mr. Arrington guilty beyond a reasonable doubt. And whether you like it or not, you have to find him not guilty.
 
 
 26
 Tr. at 87. This was manifestly not an invitation to the jury to convict Arrington. The theme of Abbenante's argument was clear; he conceded that the jury might not like Arrington but argued that it could not convict him on that basis. Because Abbenante did not concede Arrington's guilt but instead attempted to distinguish between his past guilt and his present innocence, the closing argument did not constitute per se ineffective assistance of counsel.
 
 
 27
 It is generally accepted that "[d]efense counsel, like the prosecutor, must refrain from interjecting personal beliefs into the presentation of his case." Young, 470 U.S. at 8. Thus, courts have characterized statements of personal opinion by both the defense counsel and the prosecution as improper. See, e.g., United States v. Auerbach, 913 F.2d 407, 417-18 (7th Cir.1990) (prosecution should not bolster case by referring to "prestige" of government); Clark v. Wood, 823 F.2d 1241, 1250-51 (8th Cir.1987) (improper for prosecutor to state his personal opinion that defendant, charged with murder, was a "master liar"); Darden v. Wainwright, 699 F.2d 1031, 1034-35 (11th Cir.1983). In Darden, defense counsel stated: "[t]he question is, do they have enough evidence to kill that man, enough evidence? And I honestly do not think they do." Id. at 1035 n. 10. The prosecutor responded that he was "convinced, as convinced as I know I am standing before you today, that [the defendant] is a murderer." Id. at 1034 n. 5. The Eleventh Circuit censured both the defense and the prosecution for expressing personal opinions in closing argument. We recognize that both the prosecution and the defense are entitled to " 'broad latitude in the inferences they may suggest to the jury during closing arguments.' " United States v. Smith, 778 F.2d 925, 929 (2d Cir.1985) (quoting United States v. Suarez, 588 F.2d 352, 354 (2d Cir.1978)).[3] A closing argument centered on counsel's personal opinion of his client could undermine the lawyer's ability to represent his client effectively. Abbenante's argument, however, is far from such an argument.
 
 
 28
 At trial, Arrington admitted that he had distributed drugs in the past, that he assaulted Hawkins and that he tried to dupe the police by selling fake drugs. These were all damaging admissions. Abbenante's closing argument manifests a strategic decision to attempt to take the sting from his client's admissions by acknowledging Arrington's flaws but arguing strongly that the jury could not convict Arrington on that basis. More important, Abbenante repeatedly argued that the government had failed to carry its burden of proof. Abbenante pointed out weaknesses in its evidence and showed the jury how Arrington's testimony explained the police photographs and tapes. Another lawyer might have chosen different words to argue Arrington's defense. But a reasonable choice of legal strategy is precisely what is protected by the holding in Strickland v. Washington, 466 U.S. at 690. Accordingly, we affirm the district court's denial of Arrington's motion.
 
 
 
 [1]
 Arrington also claims that the district court erred in refusing to grant a hearing on the burn bag defense and on Abbenante's failure to call Hawkins. "The basic standard applied by appellate courts in reviewing a trial court's refusal to hold such a hearing is a deferential one." United States v. Lam Kwong-Wah, 924 F.2d 298, 308 (D.C.Cir.1991). Nothing in Arrington's allegations regarding the defense or the failure to call Hawkins, especially in light of Arrington's apparent agreement with Abbenante's depiction of Hawkins, required a hearing to determine whether those purported failings prejudiced Arrington's trial
 
 
 [2]
 Abbenante also told the jury that "sometimes the law protects the guilty as well as the innocent." Tr. at 75. Taken out of context, this statement might be read as a concession of Arrington's guilt. When placed in the overall context of the closing argument, however, it is clear that Abbenante was referring to Arrington's criminal history. Immediately after that statement, Abbenante told the jury that Arrington, by taking the stand, "knew he was going to have to admit to you that he had a record ... that he was on parole ... that he was a drug dealer." Id. He added that the question was "not a question ... of whether or not Mr. Arrington is a good person.... The question that you have to decide is whether or not the government has proven him guilty beyond a reasonable doubt, in light of the defense that he has presented in this case." Tr. at 82. Abbenante then summarized Arrington's burn bag defense and pointed out the weak points in the government's case. Thus, his message to the jury was that it should not convict Arrington on the basis of his past behavior and that the government had not proved beyond a reasonable doubt that Arrington sold cocaine to Smith
 
 
 [3]
 Notwithstanding the latitude allowed in making closing arguments, trial counsel must not "state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused." ABA Model Rule of Professional Responsibility 3.4(e); see also ABA Code of Professional Responsibility, DR 7-106(c)(3), (4) (incorporating same prohibition). Abbenante made none of these statements