Willie Jasper DARDEN,
Petitioner-Appellant,
Cross-Respondent,

v.

Louie L. WAINWRIGHT, Secretary, Department of Corrections, State of Florida, Respondent-Appellee, Cross-Petitioner.

No. 81–5590.

United States Court of Appeals,
Eleventh Circuit.

July 23, 1985.

Rehearing En Banc Denied Aug. 27, 1985.

Tjoflat and James C. Hill, Circuit Judges, filed specially concurring opinions.

Johnson and Clark, Circuit Judges, filed dissenting opinions.

---

Robert Augustus Harper, Jr., John Perry, Tallahassee, Fla., for petitioner-appellant, cross-respondent.

Richard W. Prospect, Asst. Atty. Gen., Daytona Beach, Fla., for respondent-appellee, cross-petitioner.

## ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, ANDERSON and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.*

PER CURIAM:

Willie Jasper Darden was convicted of murder and sentenced to death in Florida. After exhausting his direct and collateral appeals in state court, he sought federal habeas corpus relief. The district court denied his petition. A panel of this court, considering and rejecting three constitutional claims, affirmed that denial, with one judge dissenting. *Darden v. Wainwright,* 699 F.2d 1031 (11th Cir.1983). Upon rehearing en banc, this court reversed, holding that the trial court's exclusion of one of the venirepersons from jury service was unconstitutional under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). *Darden v. Wainwright,* 725 F.2d 1526 (11th Cir.1984) (en banc).

On February 19, 1985, the Supreme Court vacated this court's en banc decision and remanded the case for further consideration in light of *Wainwright v. Witt,* 469 U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Having undertaken such a review under the standards announced in *Witt,* we conclude that *Witt* controls the juror exclusion issue in this case. Under the *Witt* standards, Darden is not entitled to habeas corpus relief. Accordingly, we affirm the district court's denial of Darden's habeas corpus petition, and we reinstate the panel opinion, 699 F.2d 1031, as to all issues, except the juror exclusion issue.

The dissent maintains that the facts of *Witt* are distinguishable and concludes that the state trial judge's decision to exclude juror Murphy in this case violates the standards announced in *Witt.* The dissent would hold that the trial judge applied an erroneous legal standard. We disagree. In his question to juror Murphy, the trial judge asked: "Do you have any moral or ... religious principles in opposition to the death penalty so strong that you would be unable without violating your own principles to vote to recommend a death penalty regardless of the facts?" The legal standard articulated in *Witt* provides that a prospective juror may be excluded if the trial court is left with the definite impression that the juror's views would prevent or substantially impair the performance of the juror's duties in accordance with the instructions and oath. Although the dissenting judges in this case properly point out that a juror with strong conscientious objections to the death penalty might well be able to lay aside those objections and follow the law, it is nevertheless true that the difficulties such a juror would experience in doing so might well rise to the level

* Circuit Judge Joseph W. Hatchett, having recused himself, did not participate in this decision. Senior Circuit Judge Lewis R. Morgan elected to participate in this decision pursuant to 28 U.S.C.A. § 46(c).

of a "substantial impairment" of his performance as a juror. Thus, although the question posed to juror Murphy may not have been ideal, we cannot conclude that it was inconsistent with the "substantial impairment" test articulated in *Witt*. Moreover, as the dissent readily acknowledges, the trial judge did articulate an unquestionably correct legal standard on many other occasions during the voir dire. Thus, we must conclude, as did the Supreme Court in *Witt*, 469 U.S. at ——, 105 S.Ct. at 855–57, 83 L.Ed.2d at 856–57, that the state trial judge applied the correct legal standard.

■ Having concluded that the trial judge employed the correct legal standard, the voir dire record with respect to juror Murphy provides fair support for the trial judge's decision to exclude Murphy. In *Witt*, the Supreme Court held that there was fair support in the record to support the trial judge's decision to exclude juror Colby. The voir dire record with respect to Colby established merely that Colby thought that her personal beliefs would interfere with her sitting as a juror.

In this case, the voir dire record with respect to juror Murphy establishes that juror Murphy had moral or religious principles in opposition to the death penalty so strong that he would be unable to vote for the death penalty regardless of the facts without violating his principles. The dissent correctly points out that the record does not establish whether or not Murphy would have been able to lay aside his principles and follow the law. However, the voir dire record with respect to juror Colby in *Witt* contained the same flaw, i.e., the record was silent as to whether juror Colby could have laid aside her personal beliefs and followed the law. The record established merely that juror Colby's beliefs would interfere with her sitting as a juror. The Supreme Court in *Witt* held that that provided a sufficient factual basis for the trial judge's decision to exclude juror Colby. We cannot conclude that there is less factual support in this case. In other words, principles so strong that a juror would be unable without violating his prin-

ciples to vote for the death penalty is at least as strong a factual basis for an exclusion decision as principles that would interfere with one's sitting as a juror.

The Supreme Court in *Witt* also relied upon two additional factors, the trial judge's opportunity to observe the juror's demeanor, and the lack of objection by defense counsel. Noting that defense counsel did not object to the exclusion of juror Colby, the Supreme Court suggested that no one in the courtroom questioned the fact that juror Colby's beliefs prevented her from sitting, and that, although not disclosed clearly on the record, it may have been readily apparent to those in the courtroom that she was properly disqualified. Similarly, in this case, the trial judge had the same opportunity to observe juror Murphy's demeanor, and Darden's trial counsel did not object to the exclusion of juror Murphy.

Thus, we conclude that *Wainwright v. Witt* compels the holding in this case that the voir dire record with respect to juror Murphy does constitute fair support for the trial judge's decision to exclude the juror.

AFFIRMED.

TJOFLAT, Circuit Judge, specially concurring:

I agree with the court's decision to affirm the district court's denial of habeas corpus relief, though for different reasons. As I wrote in dissenting to our previous en banc disposition, *Darden v. Wainwright*, 725 F.2d 1526, 1533 (1984), the district court should have dismissed the habeas petition in this case because it contained several unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 518–22, 102 S.Ct. 1198, 1203–05, 71 L.Ed.2d 379 (1982); *Galtieri v. Wainwright*, 582 F.2d 348, 354 (5th Cir. 1978) (en banc). As for the merits of petitioner's *Witherspoon* claim, assuming it to be properly before the court, I would reject the claim for want of a showing by petitioner of "cause" and "prejudice" under *Wainwright v. Sykes*, 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508–09, 53 L.Ed.2d 594 (1977), since petitioner denied the Florida Supreme

Court an opportunity to pass on it in reviewing his conviction and death sentence on appeal. *Darden v. Wainwright*, 725 F.2d at 1544–51 (Tjoflat, J., dissenting). Were I to consider four square the precise *Witherspoon* claim petitioner now presents to us, I would agree with the court that *Wainwright v. Witt*, —— U.S. ——, 105 S.Ct. 844 (1985), requires us to hold that the state trial judge did not violate the Constitution in excusing venireman Murphy for cause.

JAMES C. HILL, Circuit Judge, specially concurring:

I concur in the majority opinion.

My brother Clark finds my pre-*Witt* [1] observations to have been well taken. As a statement of what I perceived the law to have been when I wrote those passages, I do not unsay a word. I am, now, however, further instructed.

*Witt* is a major correction addressed to those of us who have accepted footnote 21 of *Witherspoon* [2] as command. Having consisted of dicta, then, it is held to be, now. *Witt*, 105 S.Ct. at 851. While we have lost our touchstone, to which I repaired, we are re-directed to the traditional test. Is the juror fair and impartial? *See Witherspoon*, 391 U.S. at 532–40 (Black, J., dissenting).

The remnant of *Witherspoon* seems to be this. A juror is no more disqualified because he or she is opposed to the death penalty than is one in favor of it. All are qualified, on this issue, who can apply the law—including mitigation, aggravation, and other elements of capital punishment—without bias in the case to be tried. "To hold that *Witherspoon* requires anything more would be to hold, in the name of the Sixth Amendment right to an impartial jury, that a State must allow a venireman to sit despite the fact that he will be unable to view the case impartially." *Witt*, 105 S.Ct. at 851.

Whether released from or cast adrift from the criterion of footnote 21, I have no difficulty in concluding, as did the trial judge, that accepting venireman Murphy would have qualified one as a juror who was not impartial. *Id.* at 853–55.

JOHNSON, Circuit Judge, dissenting:

The court holds that under the standards announced in *Wainwright v. Witt*, —— U.S. ——, 105 S.Ct., 844, 83 L.Ed.2d 841 (1985) Willie Jasper Darden is not entitled to habeas corpus relief. Because *Witt* maintains constitutional limitations on the power of the State to exclude jurors opposed to capital punishment, limits that have been transgressed in this case, I respectfully dissent.

## I. THE EXCLUSION

Willie Jasper Darden's trial for murder, robbery and attempted murder began in Florida state court on January 15, 1974, at 9:00 a.m. After all prospective jurors had been placed under oath, the trial court heard a motion in chambers. Darden's attorney moved to limit the voir dire examination of the State Attorney in order to foreclose any questioning regarding the venirepersons' views about capital punishment. In the course of denying this motion, the trial judge explained the conditions which would lead him to disqualify a juror for cause:

> It is my ruling if a prospective juror states on his voir dire examination that because of his moral, religious or conscientious principles and belief he would be unwilling to recommend a death penalty, even though the facts and circumstances meet the requirements of law, then he in effect has said he would be unwilling to follow the law the court shall charge upon it and disregard and be unwilling to follow it *or if he did follow it, it would be going against his principles,* and, therefore, I would rule that would be disqualification. If that exists, I intend

---

**1.** *Wainwright v. Witt*, —— U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

**2.** *Witherspoon v. Illinois,* 391 U.S. 510, 522–23, 88 S.Ct. 1770, 1776–78, 20 L.Ed.2d 776 (1968).

to disqualify for cause. (Emphasis supplied.)

The court reconvened after the hearing in chambers and the prospective jurors were brought into the courtroom. After a reading of the indictment and a general explanation of capital sentencing procedures in Florida and the presumption of innocence, the court told the prospective jurors that twelve venirepersons would be called to sit in the jury box, at which time the court would "inquire of you [twelve] concerning your qualifications to serve on this particular case."

Twelve jurors were seated in the jury box. After some preliminary questions regarding the twelve jurors' knowledge of the case and their occupations, the court made the following statement:

> Now I am going to ask each of you individually the same question so listen to me carefully, I want to know if any of you have such strong religious, moral or conscientious principles in opposition to the death penalty that you would be unwilling to vote to return an advisory sentence recommending the death sentence even though the facts presented to you should be such as under the law would require that recommendation?

The court proceeded to ask each of the twelve venirepersons a question similar to the one just described and excused two prospective jurors on the basis of their responses. Two more prospective jurors were seated and asked similar questions. The attorneys then questioned the twelve venirepersons as a group and individually before exercising several peremptory challenges. The process continued through the morning and resumed after lunch recess.[1]

At one point in the afternoon, venireperson Theodore Murphy was seated. After inquiring Mr. Murphy's occupation, the court asked him the following question: "Do you have any moral or religious, conscientious moral or religious principles in opposition to the death penalty so strong that you would be unable *without violating your own principles* to vote to recommend a death penalty regardless of the facts?" (emphasis supplied). Murphy replied "Yes" and was immediately excused.

The State Attorney and Darden's attorney ultimately accepted a panel of twelve jurors. During the selection of alternates, the court asked venireperson Adkins a question similar to the one asked of Murphy: "Do you hold such strong principles in opposition of the death penalty that you would be unable without violating them to recommend them, [sic] recommend a death penalty to the Court?" Adkins replied that he held no such principles and later was accepted as an alternate.

## II. THE *WAINWRIGHT V. WITT* DECISION

The Constitution gives criminal defendants the right to an impartial jury. Consequently, it limits the power of the State to exclude persons from a jury in the trial of a capital crime; the State may not exclude prospective jurors simply because they oppose capital punishment. This limitation prevents the selection of a jury "uncommonly willing to condemn a man to die." *Witherspoon v. Illinois*, 391 U.S. 510, 521, 88 S.Ct. 1770, 1776, 20 L.Ed.2d 776 (1968). Supreme Court and lower court precedent has until recently enforced this limitation through the use of a stringent standard of proof: jurors could not be excluded based on beliefs about capital punishment unless

---

**1.** During the early afternoon, venireperson Mays was seated. The court asked her whether she had any religious, moral or conscientious principles against the death penalty so strong that they would make her unwilling to recommend the death penalty regardless of the evidence. Several moments later, the court asked, "Have I asked if you have any conscientious beliefs against the death penalty?" She replied positively and after several more questions from the attorneys, venireperson Staha was seated. The court asked Staha the following question: "Do you have any opinions or principles in opposition to the death penalty that are so strong that it would make it impossible or very difficult for you to vote to recommend a verdict of a death sentence regardless of what the facts might be?" Venireperson Murphy was seated immediately after Staha.

they made it "unmistakably clear that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.*" *Witherspoon v. Illinois,* 391 U.S. 510, 522 n. 21, 88 S.Ct. 1770, 1777 n. 21, 20 L.Ed.2d 776 (1968). *See also Maxwell v. Bishop,* 398 U.S. 262, 265, 90 S.Ct. 1578, 1580, 26 L.Ed.2d 221 (1970); *Boulden v. Holman,* 394 U.S. 478, 482 (1969); *Darden v. Wainwright,* 725 F.2d 1526 (11th Cir.1984) (en banc), *vacated,* —— U.S. ——, 105 S.Ct. 1158, 84 L.Ed.2d 311 (1985).

The Supreme Court's opinion in *Wainwright v. Witt,* 105 S.Ct. 844 (1985), does not denigrate the importance of an impartial jury. It maintains the limitations on the power of the State to exclude jurors opposed to capital punishment. The primary responsibility of a trial court, whether under *Witherspoon* or *Witt,* is to distinguish between "prospective jurors whose opposition to capital punishment will not allow them to apply the law or view the facts impartially and jurors who, though opposed to capital punishment, will nevertheless conscientiously apply the law to the facts adduced at trial." *Id.* at 850–51.

*Witt* does, however, modify and "clarify" the method a trial court should use in making this difficult determination of juror impartiality. Excludable jurors no longer have to indicate an "automatic" refusal to vote for the death penalty, nor must they indicate bias with "unmistakable clarity." The "simplified" standard requires that a prospective juror leave the trial court with the definite impression that his or her views would "prevent or substantially impair the performance" of jury duties in accordance with the instructions and oath. *Id.* at 850–51.

The *Witt* decision also affects the relevant appellate standard of review. The trial court's finding of juror bias is now subject to the "presumption of correctness" contained in 28 U.S.C.A. § 2254(d) (West 1977), because the predominant function of a trial court in determining juror bias "involves credibility findings whose basis cannot be easily discerned from an appellate record." *Id.* at 855. *See Patton v. Yount,* —— U.S. ——, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). Nevertheless, an appellate court must still review a finding of juror bias based on capital punishment beliefs in order to determine whether an exception to Section 2254(d) applies.[2] There are two exceptions relevant to this case.

## III. FINDING NOT FAIRLY SUPPORTED BY THE RECORD

The state trial court in this case found that venireperson Murphy could not properly carry out his duties as a juror and excused him for cause. This factual determination, made after a hearing on the merits and evidenced by the written transcript of the voir dire proceedings, *see Witt,* 105 S.Ct. at 855–56, deserves a presumption of correctness unless Darden shows the applicability of one of the enumerated reasons for avoiding the presumption.

The presumption of correctness described in Section 2254(d) does not apply where an appellate court considering the record as a whole concludes that the record does not fairly support the factual determination of the state court. 28 U.S.C.A. § 2254(d)(8) (West 1977). The *Witt* decision indicates one possible basis for invoking that exception in this case: a petitioner may show that the record does not fairly support a factual finding of bias based on capital punishment beliefs by demonstrating that the trial court did not apply the correct legal standard in determining whether to exclude venirepersons.

The petitioner in *Witt* contended that the record did not fairly support the trial court's finding of juror bias because the excluded juror, Colby, was the first one

---

**2.** Appellate review may also serve other functions in cases of this sort, such as a determination of the precise factual finding made by the state court or an inquiry as to whether the presumption of correctness has been overcome by convincing evidence.

questioned and the record did not reveal whether the trial court applied the proper legal standard in excluding Colby. The Supreme Court rejected this argument because "where the record does not indicate the standard applied by a state trial judge, he is presumed to have applied the correct one" and because in Witt's case there was "every indication that the judge applied the correct standard." *Witt,* 105 S.Ct. at 856. Although the judge did not reveal the standard used to evaluate Colby's responses, on subsequent occasions during *voir dire* he asked jurors questions "entirely consistent" with the proper legal standard. There was no indication that the judge used different standards during the course of *voir dire.*

The Supreme Court implied throughout this discussion that if the record indicates the trial court evaluated a venireperson's qualifications under a legal standard inconsistent with the one set forth in *Witt* and *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), a finding of disqualifying bias would not be fairly supported by the record. Indeed, no other conclusion is possible. A factual finding made under the wrong legal standard lacks support because, even if a trial court correctly observes a juror's demeanor or correctly interprets the contextual meaning of different questions and answers, the court must ultimately evaluate these facts under a legal standard before making the final determination of juror disqualification. Even a judge with the best possible understanding of a juror's beliefs cannot reliably decide whether that juror is disqualified to serve if the judge does not understand the type of beliefs that could lead to disqualification. The choice of a legal standard governing jury impartiality is a separate question from whether any given juror meets the standard. *Patton v. Yount,* — U.S. —, — – — n. 12, 104 S.Ct. 2885, 2891–93 n. 12, 81 L.Ed.2d 847, 858–59 n. 12 (1984). An erroneous answer to the first question inevitably undermines the resolution of the second one. *Cf. Bose Corp. v. Consumers Union, Inc.,* — U.S. —, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)

(clearly erroneous standard inapplicable where lower court predicated its findings of fact on misunderstanding of governing rule of law).

The trial court in this case used an improper legal standard to determine whether Murphy and other venirepersons held beliefs about capital punishment that disqualified them to serve as jurors. The judge stated on the record that he intended to disqualify any prospective juror who showed that "he would be unwilling to follow the law [as instructed by the court] *or* if he did follow it, it would be going against his principles ..." (emphasis supplied). The standard applied by the trial judge in this case contains two possible grounds for disqualification: (1) an outright unwillingness to follow the law or (2) a willingness to follow the law reached only after deciding to violate personal principles. This two-fold standard of disqualification operated throughout the *voir dire.* The court questioned some venirepersons regarding the first ground and others, such as Murphy and Adkins, regarding the second ground.

The two-fold standard unavoidably conflicts with the proper standard described in *Witt.* A juror may be excluded for his or her views on capital punishment only when the trial court has the definite impression that the juror's beliefs would prevent or substantially impair the performance of duties in accordance with the instructions and oath. A belief does not "substantially impair" the performance of duty simply because it leads the person to oppose capital punishment: *Witt* states that trial courts have to distinguish among all those jurors who oppose the death penalty and may exclude only those opponents who cannot perform their duties in spite of their philosophical beliefs. 105 S.Ct. at 850–51. The *Witt* standard maintains an "essential balance" between

the right to a jury panel drawn from a "fair cross-section of the community"— which if carried to its logical conclusion would require that a juror be seated who frankly avowed that he could not and

would not follow the judge's instructions on the law—[and] the traditional right of a party to challenge a juror for bias—which if carried to its logical extreme would permit exclusion from jury panels of groups of people whose general philosophical views might have no bearing on their ability to follow a judge's instructions.

*Witt,* 105 S.Ct. at 852 n. 5. This balance was maintained in *Witt* because the questions asked by the prosecutor and the answer given by venireperson Colby led the trial court to the reasonable conclusion that Colby's views about capital punishment would "interfere" with her ability to judge impartially the guilt or innocence of the defendant. The context of the questions and answers supported the trial court's conclusion that the term "interfere" was similar in meaning to "prevent or substantially impair." Colby was properly excluded because she had beliefs in opposition to capital punishment *and* because she positively indicated that those beliefs would prevent or substantially impair the performance of her duties as a juror.[3]

Philosophical views about capital punishment, standing alone, will not substantially impair a juror's performance of duty. The *Witt* opinion compels this conclusion, for if philosophical beliefs alone were treated as a substantial impairment of duty it would destroy the balance established in that case. According to *Witherspoon* and *Witt,* the Constitution prohibits a court from presuming that personal views regarding capital punishment will prevent a juror from conscientiously following the law, for some persons strongly opposed to capital punishment may nevertheless be able to follow the law when serving as jurors. Hence, personal views opposed to capital punishment must be accompanied by the additional belief that personal views in conflict with the law could or would not be put aside by a juror.[4]

The second ground for disqualification relied upon by the trial court in Darden's case excluded prospective jurors who expressed views about capital punishment but not about the circumstances under which they might ignore those personal beliefs. The court therefore used an incorrect legal standard to exclude venireperson Murphy. Its finding that Murphy was not legally qualified to serve on the jury is not fairly supported by the record as a whole. Hence, the presumption of correctness does not apply to this finding and Darden has proven that the exclusion of Murphy was incorrect, entitling him to habeas corpus relief.

## IV. INADEQUATE DEVELOPMENT OF MATERIAL FACTS

The presumption of correctness also does not apply where the petitioner establishes "that the material facts were not adequately developed at the State court hearing." 28 U.S.C.A. § 2254(d)(3) (West 1977). Even if the trial court in Darden's case had been applying the proper legal standard to evaluate Murphy's qualifications, the presumption of correctness would still not apply because the court did not elicit sufficient

---

3. The majority's confusion of these two types of beliefs leads it mistakenly to equate the positions of Colby and Murphy: "principles so strong that a juror would be unable without violating his principles to vote for the death penalty is at least as strong a factual basis for an exclusion decision as principles that would interfere with one's sitting as a juror." The flaw in this reasoning is plain. Colby stated that a conflict between belief and duty would interfere with performance of duty, while Murphy said only that a conflict would exist. The fact that a conflict exists between belief and duty tells a judge absolutely nothing about how the juror will react when faced with that conflict.

4. There are reasons to think that this second type of conviction must be quite strong before it could disqualify a prospective juror. First, under *Witherspoon,* a venireperson had to display an absolute unwillingness to ignore personal views in conflict with a juror's duty. Since the *Witt* court stated that it was adhering to the same essential balance of interests struck by the *Witherspoon* decision, 105 S.Ct. at 852 n. 6, a very strong unwillingness to ignore personal views should be necessary. Second, the term "substantially" in the phrase "prevent or substantially impair" connotes some impairment of ability to perform duty approaching a complete impairment.

information from Murphy upon which to base its finding of bias. Murphy's responses failed to give the court any evidence regarding at least one "material fact," namely, the relationship between his personal views and his ability to perform jury duty.

Murphy's ability to put aside personal beliefs regarding capital punishment was a material fact, crucial to the adequate consideration of Darden's constitutional claim. *See Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). As discussed in section III above, the trial court could not determine Murphy's qualifications without finding out whether and to what extent he could override his personal beliefs about capital punishment when they conflicted with his duties as a juror.

The trial court never elicited this crucial information from Murphy, for the question asked of Murphy never touched on this fact. It asked only whether Murphy held principles in opposition to the death penalty "so strong that you would be unable without violating your own principles to vote to recommend a death penalty regardless of the facts." This question asks whether the conflict between personal principle and jury duty holds true for every conceivable fact situation; in other words, it deals with the scope of the conflict without addressing Murphy's ability to resolve the conflict.

The court did ask other prospective jurors whether they could ignore their personal beliefs during the performance of their duties as jurors. In all likelihood, Murphy heard the court ask the others about this matter. Yet it would be unreasonable to conclude from this fact, as the State does, that when Murphy answered "yes" to a question about the content of his beliefs, he also meant to state that he was unable to override those beliefs. The court had addressed the earlier questions to persons seated in the jury box and not to the other prospective jurors in the courtroom. Murphy had reason to think that the court

might ask him about his ability to subordinate personal belief to duty as a juror and he may even have considered what answer he would give. But the first question to Murphy asked only if he would have to violate personal principles in order to recommend a death sentence. He never had a chance to answer the second question as he might have expected. Because the court dismissed Murphy before asking about this matter, it failed to develop adequately a material fact.

The *voir dire* proceedings never revealed whether Murphy could override his personal views about the death penalty. This failure makes the presumption of correctness inapplicable to the trial court's finding of disqualification.[5] Moreover, by showing the lack of any evidence regarding Murphy's ability to override his personal beliefs, Darden has proven that the trial court was erroneous in its decision to exclude Murphy. He is entitled to habeas corpus relief.

## V. CONCLUSION

The Sixth Amendment right to an impartial jury drawn from a fair cross-section of the community gives the defendant an "inestimable safeguard" against the "corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." *Duncan v. Louisiana,* 391 U.S. 145, 156, 88 S.Ct. 1444, 1451 (1968). A fair cross-section of the community includes those "jurors who, though opposed to capital punishment, will nevertheless conscientiously apply the law to the facts adduced at trial." *Wainwright v. Witt,* 105 S.Ct. 844, 850–51 (1985). *Wainwright v. Witt* did not overrule the core meaning of *Witherspoon v. Illinois* and does not require this court to avert its attention when a petitioner claims that a state court violated his right to an impartial jury. Because the trial court in this case excluded a venireperson without determining that his views about capital punishment prevented or substantially im-

---

**5.** This failure to develop the facts necessary to establish Murphy's inability to serve as an impartial juror could fall within the exception of Section 2254(d)(3), a failure to develop the material facts, or the exception of Section 2254(d)(8), a lack of fair support in the record.

paired the performance of his duties as a juror, the district court improperly refused to grant habeas corpus relief. Accordingly, I dissent.

CLARK, Circuit Judge, dissenting:

I concur with Judge Johnson's dissent. I find compelling the following statement by Judge Hill in his special concurrence to our en banc court's reversal of the district court's denial of the writ of habeas corpus. 725 F.2d 1526 (11th Cir.1984) (en banc):

A conscientious trial judge must be bent upon determining if a prospective juror has such a mind set that he or she would refuse to vote for the death penalty regardless of the evidence in the case. That is fact-finding. "The state of a man's mind is as much a fact as the state of his digestion." *Eddington v. Fitzmaurice*, 29 Ch. 459, 483 (1885) (Bowen, L.J.).

Yet the record must contain sufficient evidence to justify a finding of fact that a venireperson was of such a mind set that he or she was, under the law, disqualified, or the finding cannot be said to be supported. In Mr. Murphy's case, there was not sufficient evidence. He was clearly shown to be a person who could not vote in favor of capital punishment without violating his principles. He was not asked (so he never said) whether or not, if the evidence were sufficiently strong and the circumstances sufficiently aggravating, he could nevertheless vote to recommend the death penalty.

Judge Fay recounts for us the painstaking and conscientious efforts of Judge Dewell to adhere to the teachings of *Witherspoon* in the voir dire proceedings. It seems clear that Mr. Murphy heard and, no doubt, understood what had been asked of those who had been examined before him. One must assume that he fully expected to be asked, after he had acknowledged his principled opposition to the death penalty, whether or not he could nevertheless vote in favor of it if the evidence in the case indicated it

to be appropriate under the law. For aught appearing, he may have felt compelled under his oath to say that he could. Until it appeared that he could not, he was not disqualified. Applying the teachings of *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976), the writ must issue, conditioned upon resentencing.

725 F.2d at 1551 (footnote omitted).

The Supreme Court made crystal clear in *Wainwright v. Witt*, 496 U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) that it reaffirmed the standard it had set in *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) when it said:

That standard is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."

105 S.Ct. at 852 (quoting from *Adams*) (footnote omitted).

It is clear that juror Murphy was never given an opportunity to state whether his views would prevent or impair the performance of his duties.

I also dissent on the issues of prosecutorial misconduct and ineffective assistance of counsel as I did initially as a member of the three judge panel, 699 F.2d 1031 (11th Cir.1983) at pages 1040–43.