Willie Jasper DARDEN,
Petitioner-Appellant,

v.

Richard L. DUGGER, Secretary, Florida
Department of Corrections,
Respondent-Appellee.

No. 86–3705.

United States Court of Appeals,
Eleventh Circuit.

Aug. 5, 1987.

Larry Helm Spalding, Office of Capital Collateral Representative, James Lohman, Mark Evan Olive, Robert Augustus Harper, Jr., Tallahassee, Fla., for petitioner-appellant.

Jim Smith, Atty. Gen., Richard W. Prospect, Asst. Atty. Gen., Daytona Beach, Fla., for respondent-appellee.

Before FAY, JOHNSON and CLARK, Circuit Judges.

FAY, Circuit Judge:

Willie Jasper Darden ("Petitioner"), a Florida prisoner under sentence of death, appeals the district court's order dismissing his third petition for writ of habeas corpus without a hearing. Because all issues raised are either successive and have been previously heard and determined or have been brought up and abandoned, thereby constituting an abuse of the writt, we affirm.

**1.** The recitation of the facts is essentially the same as set forth by the Supreme Court in *Darden v. Wainwright,* 477 U.S. 187, 106 S.Ct. 2464, 2467–68, 91 L.Ed.2d 144 (1986).

## I. FACTS [1]

The thirteen years of judicial proceedings in this case manifest substantial care and patience. Although a detailed recitation of the facts of this case appear in at least four opinions from different courts,[2] we again set forth the evidence presented at petitioner's trial in January, 1974, that led to his conviction and death sentence.

On September 8, 1973, at about 5:30 p.m., petitioner entered Carl's Furniture Store near Lakeland, Florida. The only other person in the store was the proprietor, Mrs. Turman, who lived with her husband in a house behind the store. Mr. Turman, who worked nights in a juvenile home, had awaked at about 5:00 p.m., had a cup of coffee at the store with his wife, and returned home to let their dogs out for a run. Mrs. Turman showed the man around the store. Petitioner stated that he was interested in purchasing about $600 worth of furniture for a rental unit, and asked to see several items. He left the store briefly, stating that his wife would be back to look at some of the items.

Petitioner returned a few minutes later asking to see some stoves, and inquiring about the price. When Mrs. Turman turned toward the adding machine, he grabbed her and pressed a gun to her back, saying "Do as I say and you won't get hurt." He took her to the rear of the store and told her to open the cash register. He took the money, then ordered her to an area of the store where some boxsprings and mattresses were stacked against a wall. At that time Mr. Turman appeared at the back door, Mrs. Turman screamed while the man reached across her right shoulder and shot Mr. Turman between the eyes. Mr. Turman fell backwards, with one foot partially in the building. Ordering Mrs. Turman not to move, the man tried to pull Mr. Turman into the building and close the door, but could not do so because one of Mr. Turman's feet was caught in the

**2.** *See Darden v. Wainwright,* 477 U.S. 187, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Darden,* 699 F.2d 1031 (11th Cir.1983); *Darden,* 513 F.Supp. 947 (M.D.Fla.1981); *Darden v. State,* 329 So.2d 287 (Fla.1976).

door. Petitioner left Mr. Turman face-up in the rain, and told Mrs. Turman to get down on the floor approximately five feet from where her husband lay dying. While she begged to go to her husband, petitioner told her to remove her false teeth. Petitioner unzipped his pants, unbuckled his belt, and demanded that Mrs. Turman perform oral sex on him. She began to cry, "Lord, have mercy." He told her to get up and go towards the front of the store.

Meanwhile, a neighboring family, the Arnolds, became aware that something had happened to Mr. Turman. The mother sent her sixteen year-old son Phillip, a part-time employee at the furniture store, to help. When Phillip reached the back door he saw Mr. Turman lying partially in the building. When Phillip opened the door to take Mr. Turman's body inside, Mrs. Turman shouted "Phillip, no, go back." Phillip not knowing what she meant, asked petitioner, who he could see because the light bulb inside the door was on, to help get Mr. Turman inside. The man replied, "Sure, buddy, I will help you." As Phillip looked up, the man was pointing a gun in his face. He pulled the trigger and the gun misfired; he pulled the trigger again and shot Phillip in the mouth. Phillip started to run away, and was shot a second time in the neck. While he was still running, he was shot a third time in the side. Despite these wounds, Phillip managed to stumble to the home of a neighbor, Mrs. Edith Hill. Mrs. Hill testified that she heard four shots fired—a single shot, then three in a row, at approximately 6:00 p.m. Mrs. Hill had her husband call an ambulance while she tried to stop Phillip's bleeding. While she was helping Phillip, she saw a late model green Chevrolet leave the store and head towards Tampa on State Highway 92. Phillip survived the incident; Mr. Turman, who never regained consciousness, died later that night.

Minutes after the shooting, petitioner was driving towards Tampa on highway 92,

just a few miles away from the furniture store. He was out on furlough from a Florida prison, and was driving a car borrowed from his girlfriend in Tampa. Petitioner testified that because he was driving fast on a wet road he was unable to slow down as he came up on a line of cars in his lane. He attempted to pass, but was forced off the road to avoid a head-on collision with an oncoming car. Petitioner crashed into a telephone pole. The driver of the oncoming car, John Stone, stopped his car and went to petitioner to see if he could help. Stone testified that as he approached the car, petitioner was zipping up his pants and buckling his belt.[3] Police at the site of the collision later identified petitioner's car as a 1969 Chevrolet Impala of greenish golden brown color. Petitioner paid a bystander to give him a ride to Tampa. Mary Simmons, the driver of the car, testified that she picked him up at approximately 6:30 p.m. Petitioner later returned with a wrecker, only to find that the car had been towed away by the police.

By the time the police arrived at the scene of the accident, petitioner had left. The fact that the car matched the description of the car leaving the scene of the murder, and that the accident had occurred within three and one-half miles of the furniture store and within minutes of the murder, led police to suspect that the car was driven by the murderer. They searched the area. An officer found a revolver about forty feet from the crash site. The arrangement of shells within the chambers exactly matched the pattern that should have been found in the murder weapon: one shot, one misfire, followed by three shots, with a live shell remaining in the next chamber to be fired.[4] A specialist for the FBI examined the pistol and testified that it was a Smith & Wesson .38 special revolver. An examination of the bullet that killed Mr. Turman revealed that it came from a .38 Smith & Wesson Special.

---

3. At trial Petitioner admitted that his pants were unzipped and his buckle was undone but claims that he thought he was hurt and wanted to examine himself.

4. Both Mrs. Turman and Phillip Arnold described the sequence of the shots in this manner. Mrs. Hill testified that she heard one shot, then three shots in a row.

On the day following the murder petitioner was arrested at his girlfriend's house in Tampa. A few days later Mrs. Turman identified him at a preliminary hearing as her husband's murderer. Phillip Arnold selected petitioner's picture out of a spread of six photographs as the man who shot him.[5]

## II. PROCEDURAL HISTORY

Petitioner was tried and found guilty of murder, robbery and assault with intent to commit murder in the Circuit Court of Citrus County, Florida, in January, 1974. Pursuant to Florida's capital sentencing statute, the same jury that convicted petitioner heard further testimony and argument in order to make a recommendation as to whether a death sentence should be imposed. The jury recommended a death sentence, and the trial judge accepted the jury's recommendation. On direct appeal, the Florida Supreme Court affirmed both the conviction and the sentence. *Darden v. State*, 329 So.2d 287 (Fla.1976).[6] The United States Supreme Court granted a petition for writ of certiorari, *Darden v. Florida*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976), and limited review to the sole issue of whether the prosecution's summation to the jury deprived petitioner of due process of law. *Darden v. Florida*, 429 U.S. 1036, 97 S.Ct. 729, 50 L.Ed.2d 747 (1977). After that issue was briefed and orally argued, the Court dismissed the writ of certiorari as improvidently granted.

*Darden v. Florida*, 430 U.S. 704, 97 S.Ct. 1671, 51 L.Ed.2d 751 (1977).

Petitioner next filed a motion for postconviction relief pursuant to Fla.Crim.P. 3.850 in the state trial court alleging ineffective assistance of counsel based on counsel's alleged failure to investigate an alibi defense. The state trial court denied relief and the Florida Supreme Court affirmed on the merits. *Darden v. State*, 372 So.2d 437 (Fla.1979). After the Governor signed a warrant for petitioner's execution, petitioner filed a petition for writ of habeas corpus in federal district court. The district court considered all claims on the merits and denied the petition. *Darden v. Wainwright*, 513 F.Supp. 947 (M.D.Fla.1981).[7] Petitioner raised three issues in his first appeal to this court. He challenged the process by which prospective jurors were excused, the propriety of the prosecutor's summation and the effectiveness of counsel. This court affirmed the district court's order denying relief. *Darden v. Wainwright*, 699 F.2d 1031 (11th Cir.1983). This court granted rehearing *en banc*, and affirmed the district court. *Darden v. Wainwright*, 708 F.2d 646 (11th Cir.1983). Following a second rehearing *en banc*[8] this court reversed on the claim of improper excusal of a prospective juror. *Darden v. Wainwright*, 725 F.2d 1526 (11th Cir. 1984).[9] The United States Supreme Court granted the State's petition for certiorari on that claim, vacated the Court of Appeal's judgment and remanded for reconsideration in light of *Wainwright v. Witt*,

---

**5.** There are some minor discrepancies in the eyewitness identification procedure. However, both Mrs. Turman and Phillip Arnold repeatedly and unwaveringly identified petitioner as the attacker at trial. *See Darden*, 106 S.Ct. at 2468 n. 1.

**6.** Six issues were raised in the appeal. Of the six, two of the same issues raised in the most recentl federal habeas petition were raised and disposed of on the merits by the Florida Supreme Court. Those issues concerned the constitutionality of the Florida death penalty statute, and the pretrial identification procedures.

**7.** While petitioner alleged some twenty-five constitutional violations, of import in this appeal is the disposition in the first federal habeas petition of the three claims raised in this petition. Petitioner alleged: ineffective assistance of

counsel for failure to investigate an alibi defense; the unconstitutionality of Florida's death penalty statute; and *withdrew* and abandoned the constitutional attack on the pretrial identification procedures.

**8.** While a second death warrant was signed in early August, 1983, by the Governor of Florida, the court's decision to rehear the case *en banc* effectuated a stay of execution. *Darden v. Wainwright*, 715 F.2d 502 (11th Cir.1983).

**9.** The court agreed with the first panel's evaluation of the claims regarding prosecutorial summation and ineffective assistance of counsel and reinstated the relevant portions of the panel's decision. *Darden*, 699 F.2d at 1033–37.

469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). On remand, the *en banc* court denied relief, *Darden v. Wainwright*, 767 F.2d 752 (11th Cir.1985).

Petitioner filed another motion for post conviction relief pursuant to Fla.R.Crim.P. 3.850 in the state trial court. Petitioner raised five new constitutional issues [10] and realleged error relating to the prosecution's summation. The state trial court denied relief and the Florida Supreme Court affirmed *Darden v. State*, 475 So.2d 214 (Fla. 1985). Petitioner then filed his second habeas petition in district court asserting the same challenges rejected by the state courts. The State plead abuse of the writ in its motion to dismiss and the district court dismissed the petition with prejudice as an abuse of the writ pursuant to 28 U.S.C. § 2244(b) (1982) and Rule 9(b) of the Rules Governing Section 2254 cases. *Darden v. Wainwright*, No. 85-1420-Civ-T-10 (M.D.Fla. September 3, 1985). On the same day, our court denied petitioner's emergency motion for stay of execution and denied the motion for certificate of probable cause. *Darden*, 772 F.2d 668 (11th Cir.1985). Petitioner filed an application for stay of execution in the Supreme Court. The Court treated this as a petition for certiorari and granted the application, thus staying petitioner's execution. *Darden*, 473 U.S. 928, 106 S.Ct. 21, 87 L.Ed.2d 699 (1985).

The Court in *Darden*, 477 U.S. 187, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), addressed the following three claims concerning the validity of petitioner's criminal conviction and death sentence: (1) whether the prosecution's closing argument during the guilt phase of a bifurcated trial rendered the trial fundamentally unfair and deprived the sentencing determination of the reliability required by the eighth amendment; (2) whether the exclusion for cause of a member of the venire violated the principles announced in *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); and (3) whether petitioner was denied effective assistance of counsel at the sentencing phase of his trial. The Court of Appeals was affirmed and the case was remanded for proceedings consistent with the opinion.[11] Accordingly, the Eleventh Circuit sitting *en banc* pronounced the judgment of the Supreme Court as the judgment of the *en banc* court and affirmed the district court's order denying the petition for writ of habeas corpus. *Darden v. Wainwright*, 803 F.2d 613 (11th Cir.1986).

On the same day the Eleventh Circuit opinion was published, petitioner filed a third motion for post-conviction relief in state court pursuant to Fla.R.Crim.P. 3.850. The motion was based on two claims. The first claim alleged ineffectiveness of counsel for failure to investigate the alibi defense. The state court found that failure to locate witnesses fixing an earlier time of the crime was not the result of ineffectiveness or lack of diligence.[12] The second claim alleged the unconstitutionality of Florida's death penalty statute. The second claim was denied on the merits.

---

**10.** The five new constitutional issues included: (1) alleged violations of the fifth, sixth, eighth and fourteenth amendments due to the trial court's use of non-record psychological evaluation in imposing the sentence of death when the evaluation was obtained without the petitioner's waiver of his right to be free from self-incrimination, or to confront the author of the report; (2) alleged eighth and fourteenth amendment violations due to lack of consideration by the reviewing authority of the extensive nonstatutory mitigating evidence and findings of the trial court; (3) alleged eighth amendment violation because the preparation for and conduct of the sentencing hearing robbed the jury and judge of the ability to conduct individualized sentencing; (4) alleged eighth and fourteenth amendment violations resulting from comments made by the trial judge allegedly resulting in the reduction of the jurors' sense of responsibility with regard to its function at sentencing; and (5) alleged sixth, eighth and fourteenth amendment violations resulting from ineffective assistance of appellate counsel.

**11.** Petitioner's motion for rehearing was denied. — U.S. ——, 107 S.Ct. 24, 92 L.Ed.2d 774 (1986).

**12.** The state trial court did not reach the question of the effect of the new evidence in the form of affidavits because it was not a proper matter for consideration in a 3.850 motion. It can only be presented in an error coram nobis petition to the Florida Supreme Court. *State v. Darden*, No. 69,481 (Fla. 10th Cir. October 15, 1986).

The Florida Supreme Court affirmed the trial court's order denying relief and denied the requested stay of execution.[13] *Darden v. State*, 496 So.2d 136 (Fla.1986). The Florida Supreme Court denied relief on petitioner's ineffective assistance of counsel claim because he was procedurally barred from raising the issue in a successive petition.[14] As to the unconstitutionality of Florida's death penalty statute, the Florida Supreme Court declared the issue procedurally barred because the claim could have been raised in his previous 3.850 motions. The Florida Supreme Court stated, however, were it to reach the merits, the court would reject the contention. *See Stewart v. State*, 495 So.2d 164 (Fla.1986); *Smith v. State*, 457 So.2d 1380 (Fla.1984); *State v. Henry*, 456 So.2d 466 (Fla.1984).

On the same day the Florida Supreme Court denied petitioner relief, petitioner filed his third federal habeas petition in district court. Petitioner again attacked the validity of his conviction and death sentence by alleging three constitutional violations. Petitioner alleges sixth, eighth and fourteenth amendment violations due to ineffective assistance of counsel for failing to investigate an alibi defense; eighth and fourteenth amendment violations due to grossly suggestive and unreliable identification procedures, and eighth and fourteenth amendment violations due to the unconstitutionality of Florida's death penalty statute. The State filed a motion to dismiss the petition pleading both abuse of the writ and successive petitions. The district court entered an order dismissing the petition for writ of habeas corpus as an abuse of the writ. The court noted that the three claims presented were presented in the original petition although the argu-

ments and contentions in support of these claims were somewhat different. Petitioner raises the same three issues in his appeal to this court as he presented in his petition to the district court.

## III. DISCUSSION

■ Dismissing a successive petition for writ of habeas corpus without a hearing is within the sound discretion of the federal trial judges. *Sanders v. United States*, 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963). "Theirs is the major responsibility for the just and sound administration of the federal collateral remedies, and theirs must be the judgment as to whether a second or successive application shall be denied without consideration of the merits." *Id.* We must therefore affirm the district court's order dismissing petitioner's third habeas petition unless we find that the district court abused its discretion.[15]

Petitioner's third application for federal habeas relief contained three claims. Two of the three claims have been decided on the merits in previous petitions. It was within the district court's discretion to dismiss those two claims unless the petitioner established that the ends of justice would be served by reconsideration of the claims. *Sanders*, 373 U.S. at 15, 83 S.Ct. at 1077; *Witt v. Wainwright*, 755 F.2d 1396, 1397 (11th Cir.1985); Rule 9(b) of the Rules Governing Section 2254 cases. Whether the ends of justice require reconsideration is determined by objective factors, such as "whether there was a full and fair hearing on the original petition or whether there was an intervening change in the facts of the case or the applicable law." *Witt*, 755 F.2d at 1397; *see also Kuhlmann v. Wil-*

---

**13.** A fifth death warrant had been signed by this time.

**14.** Petitioner raised this issue in his first 3.850 motion, *Darden v. State*, 372 So.2d 437 (Fla. 1979).

**15.** Petitioner contends that the district court's order of dismissal requires reversal because the court did not address the claims presented within the proper analytical framework. We disagree. District Judge Hodges has handled these petitions for habeas corpus relief since May,

1979. The dismissal of the third petition is proper. While we do not agree with the district court's reasoning that the submission of the third petition is *a fortiori* an abuse because the filing of the second petition constituted an abuse, *Darden*, No. 86–1456 Civ–T–10(c) p. 2 (M.D.Fla. October 16, 1986), we do agree that it was within the district court's sound discretion to dismiss the third petition without a hearing. The record amply supports Judges Hodges' decision.

*son,* 477 U.S. 436, ——, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986) (plurality opinion) ("[T]he 'ends of justice' require federal courts to entertain [successive] petitions only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence.").

■ The remaining claim was presented in petitioner's first petition for federal habeas corpus relief filed in May, 1979, but withdrawn and abandoned. Since the State has affirmatively plead abuse of the writ in its motion to dismiss the third petition, petitioner has the burden to rebut the State's contention. *Sanders,* 373 U.S. at 17, 83 S.Ct. at 1078; *Witt,* 755 F.2d at 1397. Petitioner must demonstrate that the failure to present the claim in the prior federal habeas proceeding was "neither the result of an intentional abandonment or withholding nor the product of inexcusable neglect." *Witt,* 755 at 1397. The concept of "abuse of the writ" is founded on the equitable nature of habeas corpus. Thus, a federal court may dismiss a subsequent petition on the ground that the petitioner abused the writ when a petitioner files a petition raising grounds that were available but not relied upon in a prior petition, *Kuhlmann,* 106 S.Ct. at 2622 n. 6, or engages in other conduct that "disentitle[s] him to the relief he seeks." *Sanders,* 373 U.S. at 17, 83 S.Ct. at 1078. With these principles in mind, we turn to the three claims presented.

## A. WHETHER COUNSEL RENDERED INEFFECTIVE ASSISTANCE FOR FAILURE TO REASONABLY INVESTIGATE THE TIME OF THE OFFENSE WHEN ALIBI WAS THE DEFENSE

This claim has been exhaustively litigated and is thereby categorized as successive. Petitioner presented this claim in his first petition for writ of habeas corpus in May,

1979. Petitioner directly challenged the investigative techniques and thoroughness of defense counsel with regard to the alibi defense, and argued that his innocence would be apparent if the attorneys had represented him effectively. The claim was denied on the merits. *Darden v. Wainwright,* 513 F.Supp. 947 (M.D.Fla. 1981). The judgment of the district court was affirmed by this court, *Darden,* 699 F.2d 1031 (11th Cir.1983), and on this issue, by every subsequent revisitation by the Eleventh Circuit, sitting *en banc. See* 708 F.2d 646 (11th Cir.1983); 725 F.2d 1526 (11th Cir.1984); 767 F.2d 752 (11th Cir. 1985).

Petitioner has the burden of showing this court that the ends of justice requires reconsideration of this claim. Petitioner offers two affidavits that support his alibi. The affidavits support the alibi that petitioner could not have been in two different places at the same time. One of the affiants stated he was at the crime scene at 5:55 p.m. and opined that the crime was committed between 5:00 p.m. and 5:15 p.m. He concluded that petitioner was innocent since petitioner was reported to be in front of Christine Bass' house with car trouble from 4:00 p.m. to approximately 5:30 p.m.[16] The second affidavit corroborated the contention that the crime was committed between 5:00 p.m. and 5:15 p.m.[17]

■ We must examine the affidavits presented in light of the total record to determine whether the ends of justice require relitigation of this claim. The overwhelming evidence of the time of the commission of the crime is contrary to the affidavits submitted by petitioner. Mrs. Turman, Mrs. Hill and Phillip Arnold all testified that the crime occurred at approximately 6:00 p.m. John Stone witnessed petitioner's automobile wreck at about 6:00 p.m. Mary Simmons offered petitioner a ride to Tampa after the 6:30 p.m. news.

---

**16.** Christine Bass is prepared to affirm that petitioner was outside her house with car trouble from 4:00 p.m. to 5:30 p.m. on the day of the murder.

**17.** We note that the affidavit was prepared thirteen years after the commission of the crime.

The facts are layed out in detail. The affiant excused its previous non-existence because he personally believed that petitioner was guilty. He comes forth now to "save an innocent man's life."

The call reporting the homicide was received by the Lakeland Police Department at 6:31 p.m. The accident was reported to the Hillsborough County Police Department at 6:32 p.m. After reviewing the record in its entirety we conclude that petitioner has failed to meet his burden of showing that the ends of justice require a federal court to revisit this claim for a sixth time.[18] The district court, within its sound discretion, properly dismissed this claim without a hearing.[19]

### B. WHETHER THE USE OF GROSSLY SUGGESTIVE AND UNRELIABLE IDENTIFICATION PROCEDURES VIOLATED PETITIONER'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS

This claim was presented in petitioner's first petition for writ of habeas corpus but later withdrawn and abandoned as being not well founded in the context of a separate issue.[20] In his third petition for federal habeas relief, eight years later, petitioner raises this claim for the second time. In its motion to dismiss the third petition filed October 16, 1986, the State plead both abuse of the writ and successive applications as a basis for dismissal. The reasoning advanced by the State, in part rested on the record in Case No. 85–1420, heard in September, 1985, and on the record in Case No. 79–566, heard in May, 1981. Petitioner must show this court that he did not abuse the writ.

Petitioner asserts that counsel, *not* petitioner, deleted the identification challenge from the first petition before adjudication in the district court. He further asserts that even if abuse is shown, the merits

must be heard because this involves a claim of innocence. We disagree.

■ The record shows that the issue presented in this third petition was specifically withdrawn from the district court's consideration as being not well founded. The issue was abandoned. Intentional abandonment of a claim is precisely the context that application of the concept of abuse of the writ is intended to address. *Witt*, 755 F.2d at 1397. Petitioner may be deemed to have waived his right to a hearing on a successive application for federal habeas relief when he deliberately abandons one of his grounds at the first hearing. *Kuhlmann*, 106 S.Ct. at 2622 n. 6; *Sanders*, 373 U.S. at 18, 83 S.Ct. at 1078; *Wong Doo v. United States*, 265 U.S. 239, 241, 44 S.Ct. 524, 525, 68 L.Ed. 999 (1924). "The petitioner had full opportunity to offer proof ... [on this claim] at the hearing on the first petition; and, if he was intending to rely on that ground, good faith required that he produce the proof then." *Wong Doo*, 265 U.S. at 241, 44 S.Ct. at 525. The federal courts will not "tolerate needless piecemeal litigation, or ... entertain collateral proceedings whose only purpose is to vex, harass, or delay." *Sanders*, 373 U.S. at 18, 83 S.Ct. at 1078.

■ As to petitioner's contentions of innocence, we again look at the record in its totality and agree, as did the United States Supreme Court, *Darden*, 106 S.Ct. at 2472–73, with the Florida Supreme Court that: "[T]here was overwhelming eyewitness and circumstantial evidence to support a finding of guilt on all charges and a recommendation of a death sentence for first degree murder." 329 So.2d at 291 (Fla.1976). The district court, in its discretion, denied peti-

---

**18.** Since petitioner has failed to meet his burden of showing that the ends of justice require revisiting the claim under a sound discretion standard, it follows that he failed to meet the heavier burden of "colorable showing of factual innocence" which would be determined by reference to *all* probative evidence of guilt or innocence. *Kuhlmann v. Wilson*, 106 S.Ct. at 2627 n. 17.

**19.** We recognize that this issue was raised in terms of ineffective assistance of counsel. This court, *Darden*, 699 F.2d at 1037 (effective at guilt and penalty phase), as well as the Supreme

Court, *Darden*, 106 S.Ct. at 2473 (effective at penalty phase), has determined that petitioner received effective assistance of counsel. The allegation of time error in the affidavits presented does not alter what has been determined regarding counsel's performance as a matter of law.

**20.** The denial of this claim was affirmed on direct appeal to the Florida Supreme Court in 1976. *Darden v. State*, 329 So.2d 287 (Fla.1976). *See supra* n. 6.

tioner a hearing on this claim and we affirm that ruling which was based upon abuse of the writ.

### C. WHETHER THE DEATH PENALTY IN FLORIDA IS IMPOSED IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS

Petitioner presented this claim in his first petition for writ of habeas corpus and it was denied on the merits. *Darden,* 513 F.Supp. 947 (M.D.Fla.1981). Petitioner did not appeal the ruling conceding defeat on the merits based on the law in effect at the time the claim was presented. *See Spinkellink v. Wainwright,* 578 F.2d 582 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).[21] Petitioner included this claim in his third petition for federal habeas relief filed in October, 1986,[22] asserting that there are viable studies now available to rely upon and the intervening grants of certiorari in *McClesky v. Kemp,* — U.S. —, 106 S.Ct. 3331, 92 L.Ed.2d 737 (1986) and *Hitchcock v. Wainwright,* — U.S. —, 106 S.Ct. 2888, 90 L.Ed.2d 976 (1986) warrant merits resolution of his claim. This claim is successive and does not warrant reconsideration because the Supreme Court decision in *McCleskey v. Kemp,* — U.S. —, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), resolved

a substantially similar challenge to the imposition of the Georgia death-penalty statute based on the Baldus Study which yielded almost identical results to the study done by Gross and Mauro that petitioner submits on his behalf.[23]

In *McCleskey,* the Court declined to hold that the study presented supported an attack of Georgia's imposition of the death penalty as violative of the eighth or fourteenth amendments. In *Hitchcock v. Dugger,* — U.S. —, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), the Court declined to reach the claim that the Florida death-penalty statute discriminates against capital defendants who murder whites and against black capital defendants in violation of the eighth and fourteenth amendments, but refers the reader to "a similar challenge to the Georgia death-penalty statute. *See McCleskey v. Kemp,* — U.S. —, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)." *Hitchcock v. Dugger,* 107 S.Ct. at 1822 n. 1. Since we are bound to follow the Supreme Court's disposition of the constitutional challenge to a substantially similar death-penalty statute on identical grounds, petitioner's request for a hearing on this claim must be denied.[24]

### IV. CONCLUSION

For the foregoing reasons we AFFIRM the district court's order dismissing peti-

---

**21.** The Eleventh Circuit, in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**22.** Petitioner also filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 on this claim in the state trial court. The trial court denied relief and the Florida Supreme Court affirmed. *Darden,* 496 So.2d 136 (Fla. 1986). The Florida Supreme Court declared petitioner procedurally barred from raising this claim but alternatively rejected it on the merits.

**23.** Petitioner rests his claim on the same proof as Hitchcock presented in his case before the Supreme Court. In Hitchcock's Petition for Writ of Certiorari he states that the

> magnitude of the race-based disparity in capital sentencing in Florida is virtually identical to the magnitude of the disparity in Georgia. After multiple regression analysis of the Flor-

ida data, Gross and Mauro found that the likelihood of receiving a death sentence in Florida for killing a white victim was 4.8 times greater than for killing a black victim. Using the same methodology, Baldus found a 4.3 times greater likelihood of death for killing a white victim in Georgia. *McCleskey v. Kemp,* 753 F.2d at 897 (footnote omitted). Brief for Petitioner, Petition for Writ of Certiorari at 48, *Hitchcock v. Wainwright,* — U.S. —, 106 S.Ct. 2888, 90 L.Ed.2d 976 (1986).

**24.** We note that the outcome of the Supreme Court case is consistent with the Florida state court disposition finding the constitutional attack on the Florida death-penalty statute without merit. *Smith v. State,* 457 So.2d 1380 (Fla. 1984); *State v. Henry,* 456 So.2d 466 (Fla.1984); *Darden v. State,* 329 So.2d 287 (Fla.1976). Some of the lower federal courts addressing that issue concur. *See e.g., Spinkellink v. Wainwright,* 578 F.2d 582 (5th Cir.1978); *Darden v. Wainwright,* 513 F.Supp. 947 (M.D.Fla.1981).

tioner's writ of habeas corpus without a hearing on abuse of the writ as well as successive application grounds.