**Opinion filed December 31, 2015**



## In The

# Eleventh Court of Appeals

_____

## No. 11-13-00049-CR

_____

## LUIS RAMIREZ RUEDAS A/K/A
## LUIS RAMIREZ RUEBAS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 3**
**Tarrant County, Texas**
**Trial Court Cause No. 1274451D**

### M E M O R A N D U M   O P I N I O N

Appellant, Luis Ramirez Ruedas a/k/a Luis Ramirez Ruebas, was convicted of aggravated sexual assault of a child under fourteen years of age and sentenced to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. In three issues, Appellant asserts that (1) the trial court abused its discretion in determining that a child witness was competent to testify, (2) the trial court erred

in admitting into evidence testimony from multiple outcry witnesses, and (3) the trial court erred in overruling defense counsel's objection to improper jury argument by the prosecutor. We affirm.

*Background Facts*

While eating lunch at a restaurant, K.C. asked her mother, C.G., to go with her to the restroom. K.C. was five years old at the time, and she usually went to the restroom by herself. K.C. told C.G. that "it was burning" when she used the restroom. C.G. asked K.C. whether she had been hurt by her bicycle, and K.C. replied that she had not. C.G. then inquired whether somebody had touched her, to which K.C. answered "yes." K.C. indicated that Appellant was the one who hurt her. K.C. would occasionally visit Appellant's home and would play with Appellant's child, who was roughly the same age. K.C. stated that Appellant had touched her when Appellant's wife was taking care of her.

K.C. told C.G. that, while she was at Appellant's home, she needed to use the restroom but someone was in the restroom by the living room. She then walked to the restroom in Appellant's bedroom. Upon exiting the restroom, K.C. saw Appellant by the bed. K.C. told her mother that Appellant then called her, lifted her onto the bed, pulled her underwear down, and touched her vagina. After receiving this report from K.C., C.G. returned to the dining area of the restaurant and told her husband what K.C. had reported to her. K.C.'s parents took her to Cook Children's Hospital and spoke with a social worker, a nurse, and a doctor about their concerns.

C.G. subsequently filed a statement with the Grand Prairie Police Department. She also took K.C. to Alliance for Children, where K.C. was interviewed by Carrie Paschall, a forensic interviewer with the Tarrant County District Attorney's Office. Paschall was designated as an outcry witness and allowed to testify regarding what K.C. had told her. K.C. told Paschall that, after coming out of the restroom at

2

Appellant's house, she was taken by Appellant into a room where he laid her down, pulled her pants and underwear down, and made contact with her vaginal area with his belt, which caused her pain.

The State called K.C. as a witness at trial. The trial court conducted a hearing outside the presence of the jury prior to her testimony to determine her competency to testify. The trial court found K.C., who was six years old at the time of trial, to be a competent witness. K.C. testified that, after using the restroom at Appellant's house, she climbed onto the bed in Appellant's bedroom. She further testified that Appellant removed her underwear and penetrated her vagina with either his penis or his belt. K.C. testified that Appellant told her not to tell anyone about what he had done.

The jury convicted Appellant of aggravated sexual assault of a child and indecency with a child by contact and exposure. At the request of Appellant, the judgment was reformed to a single conviction of aggravated sexual assault of a child. In a special issue submitted at the punishment phase, the jury determined that the victim was a child younger than six years of age at the time of the offense.

*Analysis*

In his first issue, Appellant asserts that the trial court abused its discretion in determining that K.C. was competent to testify. Appellant contends that K.C. gave answers that were inaccurate and showed an inability to intelligently observe events in question. He also argues that she lacked the capacity to recollect or narrate events. A trial court's determination of whether a child witness is competent to testify is reviewed under an abuse of discretion standard. *Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995). We review the child's responses to qualification questions, as well as the child's entire testimony, to determine whether the trial court's ruling constituted an abuse of discretion. *Davis v. State*, 268 S.W.3d 683,

3

699 (Tex. App.—Fort Worth 2008, pet. ref'd); *De Los Santos v. State*, 219 S.W.3d 71, 80–81 (Tex. App.—San Antonio 2006, no pet.); *Fox v. State*, 175 S.W.3d 475, 481 (Tex. App.—Texarkana 2005, pet. ref'd); *Woods v. State*, 14 S.W.3d 445, 451 (Tex. App.—Fort Worth 2000, no pet.).

Texas Rule of Evidence 601(a)(2) provides that a child "whom the court examines and finds lacks sufficient intellect to testify concerning the matters in issue" is incompetent to testify. TEX. R. EVID. 601(a)(2). Under this rule, the party seeking to exclude the witness from testifying must raise the issue of the witness's competency and shoulders the burden of establishing incompetency. *Gilley v. State*, 418 S.W.3d 114, 120 (Tex. Crim. App. 2014). Under Rule 104(a) of the Texas Rules of Evidence, the competency of a child witness is a preliminary question for the trial court to determine, and the trial court is not bound by the Rules of Evidence in making that determination. *Id.* at 121. When the competency of a child witness is challenged, the trial court must assure itself that the child has (1) the ability to intelligently observe the events in question at the time of the occurrence, (2) the capacity to recollect the events, and (3) the capacity to narrate the events. *Watson v. State*, 596 S.W.2d 867, 870 (Tex. Crim. App. 1980). The third element, involving the capacity to narrate, requires that the witness is able to understand the questions asked, frame intelligent answers to those questions, and understand the moral responsibility to tell the truth. *Id.* at 870.

Prior to receiving testimony at trial, the trial court asked K.C. a series of questions to determine her competency to testify. The trial court asked K.C. if she knew where she was, and she initially replied, "Home." After determining that she would be more comfortable answering the questions in Spanish, the trial court continued its questioning through an interpreter. The trial court again asked if she knew where she was or what the building was called, to which she replied, "It's a court." The trial court then asked, "[I]f I told you that the robe I had on was yellow,

4

is that the truth or a lie?" K.C. replied, "A lie." The trial court asked, "Are you supposed to tell the truth or are you supposed to tell lies?" K.C. replied, "The truth." K.C. was then asked, "And why is it important to tell the truth?" K.C. answered, "Because if not, somebody's going to get mad at you." She further answered that it was "good" to tell the truth and "bad" to tell lies.

The court then asked K.C. several more questions, such as the following: if she knew what city she lived in, to which she replied, "I don't know"; if she knew what city her school was in, to which she replied, "No"; if she knew what state she was in, to which she replied, "I don't remember"; and if she knew the day of the week, to which she replied, "No." The trial court further asked her if there were sometimes things she could not remember, to which she replied, "No." K.C. was then asked, "If we asked you a question and you didn't know the answer, what would your answer be?" K.C. answered, "That I don't know." At the conclusion of the preliminary examination, Appellant's trial counsel argued that K.C. was "obviously[] not competent" because "[s]he has no comprehension of time or space or place." The trial court overruled Appellant's objection and permitted K.C. to testify at trial.

On direct examination during the trial, K.C. was asked if she remembered going to the hospital, to which she replied, "No." The prosecutor then asked K.C. if K.C. remembered talking to her about what happened. K.C. replied, "Yes." K.C. was asked, "Do you remember who touched you?" K.C. replied, "No." With the assistance of some "anatomical dolls," K.C. subsequently testified that someone had "touched" her and that it was a "bad touch." She testified that someone had touched her vagina under her clothes and that it happened at her friend's house. K.C. subsequently identified Appellant as the person that had removed her underwear and penetrated her vagina.

K.C.'s responses to the trial court's qualification questions, as well as questions from counsel regarding her ability to recollect and narrate the events, were at times equivocal regarding her competency to testify. As noted above, some of the initial confusion with K.C.'s responses was attributable to a language translation issue. Furthermore, we must review the child's entire testimony, as well as the child's responses to qualification questions, to determine whether the trial court's ruling constituted an abuse of discretion. *Davis*, 268 S.W.3d at 699. Our review of the entirety of K.C.'s testimony demonstrates that she was able to observe the events of her encounter with Appellant, recollect those events, and then narrate them at trial. *See Watson*, 596 S.W.2d at 870. Considering her testimony as a whole, we cannot conclude that the trial court abused its discretion in determining that K.C. was competent to testify. Appellant's first issue is overruled.

In Appellant's second issue, he asserts that the trial court erred in permitting multiple outcry witnesses to testify at trial. The State initially called the victim's mother, C.G., as an outcry witness. Afterwards, the State called Paschall, a forensic interviewer, as an additional outcry witness. The prosecutor asserted that Paschall was also a proper outcry witness because K.C. told her additional details that she did not tell C.G. After conducting a hearing outside the presence of the jury, the trial court ruled that Paschall could also testify as an outcry witness. On appeal, Appellant challenges the trial court's ruling permitting Paschall to testify as an additional outcry witness.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We will reverse the trial court's decision only if it acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Id.* at 380. We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* at 391. A trial court has "broad discretion" to determine the

6

admissibility of outcry evidence, and we will not disturb its determination as to the proper outcry witness absent a showing in the record that the trial court clearly abused its discretion. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Smith v. State*, 131 S.W.3d 928, 931 (Tex. App.—Eastland 2004, pet. ref'd).

Article 38.072 of the Texas Code of Criminal Procedure creates a hearsay exception for a child complainant's out-of-court "statements" that "describe . . . the alleged offense," so long as those statements "were made to the first [adult] person . . . to whom the child . . . made a statement about the offense." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a) (West Supp. 2015); *see Bays v. State*, 396 S.W.3d 580, 585 (Tex. Crim. App. 2013). Hearsay testimony from more than one outcry witness may be admissible under Article 38.072 if the witnesses testify about different events. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (citing *Broderick v. State*, 35 S.W.3d 67, 73–74 (Tex. App.—Texarkana 2000, pet. ref'd)). Thus, admissible outcry witness testimony is event-specific, not person-specific. *Eldred v. State*, 431 S.W.3d 177, 181–82 (Tex.App.–Texarkana 2014, pet. filed); *Polk v. State*, 367 S.W.3d 449, 453 (Tex.App.–Houston [14th Dist.] 2012, pet. ref'd). Because designation of the proper outcry witness is event-specific, when a child is victim to more than one instance of sexual assault, it is possible to have more than one proper outcry witness, so long as the outcries concerned different events and not simply repetition of the same event told to different individuals. *Robinett v. State*, 383 S.W.3d 758, 762 (Tex. App.—Amarillo 2012, no pet.); *Brown v. State*, 189 S.W.3d 382, 387 (Tex. App.—Texarkana 2006, pet. ref'd).

Appellant's second issue centers on whether K.C.'s outcry to Paschall concerned a different offense than K.C.'s outcry to C.G. We note that Appellant was tried for two offenses. The first count in the indictment charged him with aggravated sexual assault of a child, a first-degree felony, by alleging that he intentionally or knowingly penetrated the sexual organ of K.C. with either a belt or

an unknown object. *See* TEX. PEN. CODE ANN. § 22.021(a)(1)(B)(i), (e) (West Supp. 2015). The second count of the indictment charged Appellant with indecency with a child by contact, a second-degree felony, by touching the sexual organ of K.C. *See id.* § 21.11(a)(1), (c)(1), (d) (West 2011).

K.C. first told C.G. that Appellant pulled her underwear down and touched her vagina, but made no mention of penetration. During the subsequent interview with Paschall, K.C. told her that Appellant contacted her vaginal area with his belt, which "went between the labia of her female sexual organ." In *Divine v. State*, the child victim first denied that digital penetration had occurred when making her initial outcry statement to her grandmother. 122 S.W.3d 414, 420 (Tex. App.—Texarkana 2003, pet. ref'd). However, she later told a forensic interviewer that digital penetration had occurred. *Id.* The Texarkana Court of Appeals held that the trial court did not abuse its discretion in allowing both outcry witnesses to testify because the outcries concerned different matters. *Id.* The court reasoned that, "[a]t the simplest level, the child did not make an outcry about penetration to the grandmother, but did make such an outcry to the interviewer." *Id.*

The facts in *Divine* are analogous to the facts in this appeal. K.C.'s initial outcry to C.G. did not address the matter of penetration, while her subsequent outcry to Paschall did address penetration. Penetration was an essential element of the higher level offense of aggravated sexual assault of a child as alleged in the first count of the indictment. Thus, Paschall was the first person over the age of eighteen that K.C. told about the offense as alleged in the first count of the indictment, which was also the sole offense for which Appellant was convicted. *See Turner v. State*, 924 S.W.2d 180, 183 (Tex. App.—Eastland 1996, pet. ref'd) (citing *Garcia*, 792 S.W.2d at 91–92) (the outcry witness must be the first person to whom the child makes a statement that, in some discernible manner, describes the alleged offense).

8

Accordingly, the trial court did not abuse its discretion when it permitted Paschall to testify as an outcry witness. Appellant's second issue is overruled.

In Appellant's third issue, he asserts that the trial court erred in denying his objection to improper jury argument by the prosecutor. He contends that the prosecutor's argument constituted an improper attempt to inject the prosecutor's personal opinion about the veracity of the child victim. *See Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981). A trial court's ruling on an objection to improper jury argument is reviewed for an abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004).

The prosecutor made the following argument to the jury:

> And, ladies and gentlemen, I submit to you, he also calls into question my own reputation. From the very beginning he said he'd have you believe that all this was a crime. Ladies and gentlemen, we would have you believe it was a crime because it is.
>
> I do not stand here today after all that I've done, all the schooling I've gone through because I'm part of a conspiracy. Ladies and gentlemen, I stand here today because [K.C.] is telling the truth.

Appellant's trial counsel objected that this statement was "[p]rosecutor opinion, not admissible." The trial court overruled the objection. Trial counsel then refined his objection by asserting that the prosecutor was "stating her own opinion." The prosecutor continued as follows: "I'm responding to what he's accusing all of us of. He's accusing us of making up a conspiracy. Accusing these witnesses that they would do that. And you know why? Because there's too much consistency to look away. Too much consistency." The prosecutor then gave additional arguments detailing why the jury should believe K.C.'s version of the events, including arguing, "[H]ow does a five-year-old child even conceive of this? Because it happened to her. Because she can't forget it."

9

"It is the duty of trial counsel to confine their arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence is therefore improper." *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973) (quoting 56 TEX. JUR. 2d *Trial* § 271, at 613). "Thus, proper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) (citing *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Alejandro*, 493 S.W.2d at 231). "The arguments that go beyond these areas too often place before the jury unsworn, and most times believable, testimony of the attorney." *Alejandro*, 493 S.W.2d at 232. We examine allegedly improper argument in light of the facts adduced at trial and in the context of the entire argument. *McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989).

It is ordinarily improper for a prosecutor, during his argument, to vouch for the credibility of a witness. *Chapman v. State*, 503 S.W.2d 237, 238 (Tex. Crim. App. 1974). However, if the argument in question was invited by argument of defense counsel and was in reply thereto, no reversible error is shown. *Id.* In *Chapman*, the Court of Criminal Appeals held that a prosecutor's statement during closing argument—that "I would ask you to believe that I would not intentionally or knowingly be a party - - - to submitting perjured evidence before you"—was invited when defense counsel asserted that the prosecution's narrative was fabricated. *Id.*

In this case, Appellant acknowledges in his brief that trial counsel's strategy "was to discredit the child witness and to call into question the very logic of the State's case." In his opening statement at trial, trial counsel said:

> Ladies and gentlemen, what you hear in this case will strike you as being illogical, nonsensical, improbable, *and at times professionally constructed*. What you will hear in this case will make you understand

10

that what is being sold to you as a crime is not just improbable, not just illogical, but impossible. And, therefore, you will understand that it is not true.

(Emphasis added). Trial counsel asked K.C. on cross-examination, "And all the people who have interviewed you have helped you remember the things you didn't remember?" In closing argument, trial counsel asserted that Detective Aaron Martinez, who took C.G.'s offense report, improperly influenced Paschall before she interviewed K.C. Appellant's trial counsel stated:

> [W]here does he come at you with this cornucopia, this plethora of evidence? Does he go to the house? Does he get a layout of the house? Does he take pictures? Does he talk to neighbors? Does he do anything? No.
>
> Not until February 9th of 2012 when he sends a copy of his offense report to the forensic examiner. When his mind is already made up and he's decided: Well, now I have to put words in their mouths. I have to convince them as well.
>
> On that same day that he sends his offense report to Carrie Paschall, he calls up Cook's and he says, I have a little girl that I need to get examined. Tells them what's going on.

Appellant's trial counsel also implied that Paschall led K.C. toward Detective Martinez's allegedly fabricated narrative during her interview:

> Q: All right. And now let me ask you, technique-wise, if -- if a child on -- when initially asked says -- for example, let's take a hypothetical conversation. If a child says, no, I wasn't touched, you don't end the conversation there, do you?
>
> A: Depends on what the facts are up to that point.
>
> Q: Okay. Now, there is -- there is -- there is a body of -- of expertise that suggests that an interviewer should not have a report and not necessarily know about, quote, alleged facts when conducting the interview, less the interview [sic] try to lead the child. Are you aware of that?

11

The record makes it clear that Appellant's trial counsel, on multiple occasions, asserted or implied that the State's narrative was, in his own words, "at times professionally constructed."

The Amarillo Court of Appeals addressed a similar situation in *Lange v. State*, 57 S.W.3d 458 (Tex. App.—Amarillo 2001, pet. ref'd). The prosecutor in *Lange* argued in closing argument that he "took an oath and I resent his allusions that I'm trying to do a perversion of justice . . . in coaching that witness." 57 S.W.3d at 468. In response to the defense counsel's objection on the ground of "personal opinion," the prosecutor asserted that the argument was invited based upon his name being included on a list of people that the victim had to fool if she was lying. *Id.* The court noted that defense counsel had attempted to attack the victim's credibility by showing inconsistencies in her story and suggesting that she had been manipulated by others into bringing the allegations. *Id.* at 469. The court further noted that the child victim was specifically questioned during cross-examination as to each person she had spoken to about the alleged incidents, including the prosecutors. *Id.* The court concluded that the prosecutor's argument had been invited based upon the manner in which defense counsel had attacked the victim's credibility. *Id.*

Trial counsel's attack on K.C.'s credibility and his suggestion that she had been manipulated is very similar to the situation in *Lange*. In this regard, trial counsel, during his cross-examination of K.C., made reference to the fact that K.C. had visited with the prosecutor in preparation for trial. Accordingly, the prosecutor's argument vouching for K.C.'s veracity was invited, as was the case in *Lange*. However, the prosecutor went a step further than the prosecutor in *Lange* when she stated that K.C. "is telling the truth." *See Lange*, 57 S.W.3d at 469 (noting that "[t]he prosecutor never directly stated that he believed the complainant"). We conclude that it was improper for the prosecutor to bolster K.C.'s testimony by injecting into

12

the argument her personal opinion about K.C.'s honesty and truthfulness. *See Menefee*, 614 S.W.2d at 168.

Even if an argument is improper, it will not constitute grounds for reversal unless the statements to the jury injected new and harmful facts into the case or were so extreme and manifestly improper that they deprived the defendant of a fair and impartial trial. *Brown*, 270 S.W.3d at 573 n.3. "In determining whether jury argument is extreme or manifestly improper, we look at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.* (quoting *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)) (internal quotation mark omitted). "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Darden v. Wainwright*, 699 F.2d 1031, 1036 (11th Cir. 1983)). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

In *Flores v. State*, the Corpus Christi Court of Appeals addressed a similar situation when the prosecutor argued, "This is a little girl. She got up here and told the truth." 778 S.W.2d 526, 528 (Tex. App.—Corpus Christi 1989, no pet.). The court concluded that the argument was not so extreme as to require reversal given the context in which the credibility of the complainant was being attacked. *Id.* The same rationale applies to the facts in this case given trial counsel's attack on K.C.'s credibility and his assertion that her allegation was "professionally constructed." The isolated comment was made within a broader response addressing the consistency of K.C.'s allegations and the difficulties of a young child in being able to remember an event and testify about it afterward. Moreover, the thought that the

prosecutor believed that K.C. was telling the truth was not so extreme as to result in a denial of due process. Accordingly, Appellant's third issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


December 31, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.